[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 204 
This is an action brought by the plaintiffs to recover damages for an alleged breach of contract. It is the second appeal. The first appeal is reported, Dyer Bros. I. Wks. v. Central I.Wks., 182 Cal. 588 *Page 205 
[189 P. 445]. After the decision on the first appeal the case was remanded to the trial court and, pursuant to the mandate of the supreme court, the demurrer was overruled, the defendants answered, and a trial was had before the court sitting without a jury. A judgment was rendered in favor of the plaintiffs, and the defendants have appealed.
The nature of the controversy is fully stated in the decision above mentioned and we pass at once to a consideration of the points made by the appellants. The first point made by the appellants is that the trial court erred in denying the appellants a jury trial. In this behalf the appellants argue that the case was an action at law. We think the point was decided adversely to the appellants by what was said by the supreme court in its decision on the first appeal. [1] Conceding, without deciding, that the case presented certain equitable issues and certain issues at law, at no time did the appellants present the point in the lower court and ask that court to dispose of the equitable issues and call a jury to try the issues at law. The trial court did not commit an error in refusing to submit all issues to a jury.
[2] The appellants contend that the evidence introduced showed that the respondents were seeking to recover a penalty and not liquidated damages. This point was ruled adversely to the appellants in so far as the pleadings are concerned on the first appeal. The evidence which was introduced followed the pleadings. True it is that some of the witnesses made use of the word penalty instead of the words liquidated damages. That irregularity was committed also by the parties in drafting the contract and the fact was before the court on the first appeal. But, taking up the contract by its four corners, the supreme court reached the conclusion that the parties were attempting to draw a contract providing for liquidated damages in the event of a breach thereof and not for a penalty. No evidence is called to our attention that causes us to entertain a different opinion on the evidence than the supreme court reached on a consideration of the facts as pleaded.
[3] The appellants also contend that the proof showed that the respondents suffered no actual damage of any kind. From the nature of the case it was impracticable and extremely difficult for any one of the respondents to fix the amount of its actual damage and to that extent the appellants' *Page 206 
contention is sound, but that very fact was what caused the parties in the first place to attempt to frame the contract and to insert the provisions which are now in controversy. In other words, it is the contention of the respondents that from the date their contract was made until the alleged breach by the appellants, each and all of the parties to the contract were on an even basis in being precluded by the labor organizations from getting any business. And it is the contention of the respondents that from the time that the appellants made the concessions to the labor organizations that the appellants were at once enabled to get business and completed it whereas the respondents were not able to compete with the appellants on an even footing. In this contention we think the respondents are clearly correct.
[4] In the next place the appellants make two points which are but different ways of expressing their contention that they proved at the trial a complete defense, whether the action be said to sound in equity or otherwise. They say, "Respondents did not come into court with clean hands and were not entitled to relief in a court of equity," and they say also, "Respondents, themselves, failed to perform the contract and acted in respect thereto exactly as they have charged appellants with having acted." An understanding of these contentions requires a consideration of the sequence of certain events. June 16, 1916, the contract was executed and by its terms it was to continue for three years from date. On August 8, 1916, two of the appellants, and on September 12, 1916, the third appellant, served notice on the respondents that they respectively withdrew from the contract and would not thereafter be bound by any of the terms of said contract. On February 1, 1917, the respondents abandoned the contract in the following manner: On that date each of the respondents, acting separately, changed its method of doing business by proceeding to operate its shop on an eight-hour day instead of a nine-hour day. That act by respondents constituted a rescission. (Pearson v. Brown, 27 Cal.App. 125, 131 [148 P. 956].) Thereafter respondents continued to transact their business until the twenty-sixth day of September, 1917, at which time they executed an instrument in writing purporting to terminate the agreement without any reservations whatever. Thereafter, on the seventeenth day of December, 1917, this action was commenced, *Page 207 
which purports to be an action on the contract to recover the liquidated damages provided for in the contract. It is not contended that the writing dated September 26, 1917, was not properly signed and executed, but it is contended that the execution of said writing was an idle act because theretofore on the first day of February, 1917, by their acts the respondents did, in violation of the terms of the contract, cease to act thereunder, and did, as individuals, and not as an organization, change from a nine-hour day to an eight-hour day and thus do and commit the very act that the contract was drawn to prevent. The respondents do not attempt to answer the point. Indeed, we do not see what answer could be made.
[5] When on September 12, 1916, the appellants abandoned the contract, the respondents had three remedies. They could treat the contract as rescinded and recover upon a quantum meruit as far as they had performed; or they could keep the contract alive for the benefit of both parties, being at all times ready and able to perform; or, third, they could treat the repudiation as putting an end to the contract for all purposes of performance, and sue for the profits they would have realized if the respondents had not been prevented from performing. (McConnell
v. Corona City Water Co., 149 Cal. 60, 65 [8 L.R.A. (N.S.) 1171, 85 P. 929].) They did not take any one of those courses, but thereafter, on February 1, 1917, in violation of their own contract and in violation of the rules adopted by the executive committee, they changed from a nine-hour day to an eight-hour day. That act on the part of the respondents was a breach of performance. It was of such a substantial nature as to be a breach in the very identical covenant which gave rise to the formation of the contract. From that day on the respondents could not in any proper sense be said to have performed their contract.
If the respondents would assert that the appellants, having renounced the obligations of the contract, then, and in that event, the respondents thereafter owed no duty toward the appellants, that contention is sound only within certain limits. If thereafter they expected to make no claim on the appellants the contention would be sound. If, on the other hand, they intended, as they would here attempt to do, to hold the appellants responsible to them in an action for *Page 208 
damages for the breach of the contract, then, and in that event, as stated in the McConnell case, supra, they were bound to "keep the contract alive for the benefit of both parties. . . ." The respondents were not entitled to breach the contract, rescind it, or abandon it, and to attempt thereafter to base an action on the contract as for a breach of damages. [6] When both parties have rescinded or abandoned a contract the rights of either one thereafter may be enforced not in an action on the contract, but the party who would maintain the action is confined to an action on the common counts. (McConnell v. Corona City Water Co.,supra; Olson v. Lamb, 56 Neb. 104 [71 Am. St. Rep. 670, 677, 76 N.W. 433].) The application of the rule does not depend upon which party was the first to depart from the covenants of the contract. (Cleary v. Folger, 84 Cal. 316 [18 Am. St. Rep. 187, 24 P. 280]; Drew v. Pedlar, 87 Cal. 443, 449, 450 [22 Am. St. Rep. 257, 25 P. 749]; Phelps v. Brown, 95 Cal. 572, 574, 575 [30 P. 774]; Easton v. Cressey, 100 Cal. 75;Bray v. Lowery, 163 Cal. 256, 261 [124 P. 1004].) When the appellants departed from the covenants of the contract the respondents were not called upon to likewise depart from the covenants of the contract. Nevertheless, as they did so they may not maintain an action on the contract. As said by the supreme court in House v. Piercy, 181 Cal. 247, at page 252 [183 P. 807, 809]: "But if the facts exist which justify a rescission by one party, and he exercises his right and declares a rescission in some effectual manner, he terminates the contract, and it cannot thereafter be made the basis of an action for damages caused by the breach of its covenants." In other words, in the case before us the terms of the contract are such that the contracting parties agreed one with the other that they would do and would not do certain things with reference to a third party, to wit, their employees. No question regarding excuse for nonperformance (Civ. Code, sec. 1511) is involved. No question of prevention of performance (Civ. Code, sec. 1512) is involved. But the very nature of the contract was such that the acts of each employer toward his employees became the consideration for the promise of each and every other employer. To present the case the plaintiff pleaded outright performance. The trial court found the fact as alleged. Whereas, all of the proof was to the effect *Page 209 
that the respondents failed in performance in the same manner as did the appellants, only to a less degree.
[7] If it be said that the contract contained a covenant authorizing the termination of the whole contract, the answer is that on February 1, 1917, the respondents did not attempt to proceed to terminate the contract in the manner stipulated in the contract. When thereafter, on September 26, 1917, they did attempt to terminate the contract in the manner provided therein, their act in that behalf was, as stated above, an idle act. They had breached the contract on February 1, 1917, and continuously thereafter, until September 26, 1917. Being themselves in default they could not legally rescind. (California Sugar etc. Agency
v. Penoyar, 167 Cal. 274 [139 P. 671].) However, conceding for the moment that they could at that time rescind, still their position is no better. [8] The purported document of rescission is set forth in the transcript and it purports to be an outright termination of the contract without any reservations. If, therefore, it be treated as a rescission, it operated to exterminate the contract wholly (Civ. Code, sec. 1688), and, as the contract had been rescinded by both parties prior to the commencement of the action, neither party had any right to maintain any action founded thereon. (13 C.J. 623, sec. 683.)
The judgment is reversed.
Nourse, J., and Langdon, P.J., concurred.
A petition for a rehearing of this cause was denied by the district court of appeal on May 7, 1925, and the following opinion then rendered thereon:
THE COURT.
The petition for a rehearing is denied. The respondents admit that they abandoned the contract and all of their allegations and proofs are to the effect that the appellants abandoned the contract. The authorities cited in our former opinion sustain the proposition that under such circumstances no recovery can be had on the contract. [9] The respondents, however, earnestly contend that their whole case rests on the theory that they were prevented from performing, but we do not see any "prevention" as that expression has been defined by the courts of this state. There *Page 210 
is neither allegation, proof, nor finding that the respondents have "been prevented from going on with their contract by the positive affirmative act of" the appellants. (Cox v.McLaughlin, 54 Cal. 605.) The contract between the parties does not contain a single "condition precedent." It does contain mutual covenants. In doing what they did the appellants did not "breach a condition precedent to the performance by the respondents." They did not, therefore, commit an act preventing the performance by the respondents. (Alderson v. Houston,154 Cal. 1 [96 P. 884].) Neither in the former opinion nor in this opinion are we holding that the appellants can take advantage of their own wrongful breach. We are holding that the respondents, having themselves failed to perform from February 1, 1917, until September 26, 1917, may not recover on a cause of action based on the contract. Their rights, however, may be enforced in a different manner. "We have seen that when parties make a contract which is not apportionable, no part of the consideration can be recovered in an action on a contract, until the whole of that for which the consideration was to be paid is performed. But it must not be inferred from this that a party who has performed a part of his side of a contract, and has failed to perform the residue, is in all cases without remedy. For though he can have no remedy on the contract as originally made, the circumstances may be such that the law will raise a new contract, and give him a remedy on a quantum meruit.
"Thus if one party is prevented from fully performing his contract by the fault of the other party, it is clear that the party thus in fault cannot be allowed to take advantage of his own wrong, and screen himself from payment for what has been done under the contract. The law, therefore, will imply a promise on his part to remunerate the other party for what he has done at his request; and upon this promise an action may be brought." (2 Parsons on Contracts, [*]522, [*]523.)
"Where one party renounces the contract and refuses to perform, the other party is excused from performance on his side, this being a code provision in some jurisdictions. But it should be noted that the repudiation of the contract by one party cannot be held equivalent to performance, or a legal excuse for nonperformance by the other party of conditions *Page 211 
precedent, so as to authorize a recovery as for performance of such conditions." (13 C.J. 653, 654.)
"An allegation that the opposite party refuses to permit performance of conditions precedent is not equivalent to an allegation of performance (Myrick v. Merritt, 22 Fla. 335); and especially is this true where the complaining party, as in this case, does not allege his willingness and ability to perform at the time of such refusal, or at any time prior to the expiration of the period fixed for performance. It is true that an absolute repudiation of his part of a contract by one of the parties thereto prior to the time fixed by the contract for performance of the agreement of the other party, or while the contract is being performed by such other within the time limited, will entitle such other party to an action for damages as for a breach of the contract (Myrick v. Merritt, 22 Fla. 335; Sullivan v. McMillan, 26 Fla. 543); but in this case the defendant does not allege or claim any damage to him arising from the complainant's alleged repudiation of the contract, and in no case can a repudiation of a contract by one party be held equivalent to performance, or a legal excuse for nonperformance by the other party of conditions precedent, so as to authorize recovery as for performance of such conditions precedent." (Thomson v. Kyle, 39 Fla. 582, 598 [63 Am. St. Rep. 193, 199, 23 So. 12, 17.)
"The general rule is that where one of the parties has endeavored in good faith to perform and has substantially performed his contract and thereby conferred on the other party a substantial benefit, although he has failed to perform in some particulars, he may recover, as the case may be, on the quantummeruit or the contract price, less the damage sustained by the other party by reason of the failure of strict performance. The right to this recovery does not always come from the original contract, but rests on another contract implied by the law. It is another statement of the principle to say that where the default was not willful, but due to such causes as sickness, death, prevention of performance by the other party or other causes not due to his fault, the law creates a promise to pay for the benefits received *Page 212 
from part performance." (3 Elliott on Contracts, sec. 2101.)
A petition by respondents to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on June 3, 1925.