[No. B016357. Second Dist., Div. Five. July 14, 1987.]

JOSE CAMACHO et al., Plaintiffs and Respondents, v.
MICHAEL SCHAEFER, Defendant and Appellant.

COUNSEL

Floyd L. Morrow and Michael Schaefer, in pro. per., for Defendant and Appellant.

R. Samuel Paz for Plaintiffs and Respondents.

OPINION

**FEINERMAN, P. J.—**

Respondents, Jose and Maria Camacho, brought suit against appellant, Michael Schaefer, their former landlord, for statutory and compensatory damages for interference with their lawful occupancy of rented premises. (Civ. Code, § 789.3.) Additional causes of action were stated for forceable entry, breach of implied warranty of habitability, nuisance and intentional infliction of emotional distress. Respondents also sought punitive damages, and an award of reasonable attorney's fees pursuant to Civil Code section 789.3, subdivision (d). Appellant cross-complained for fraud and breach of duty to pay rent. The issue of attorney's fees was bifurcated for trial by the

court. The remaining issues were submitted to a jury on a special verdict form which directed the jury to break down any award in favor of respondents by party and category. The jury found in favor of respondents and against appellant on both the complaint and the cross-complaint. They awarded damages as follows:

To Jose Camacho:

| | |
|---|---|
| Statutory damages (Civil Code, § 789.3): | $1,000.00 |
| Compensatory damages: | 1,800.00 |
| Punitive damages: | 5,000.00 |
| Total: | $7,800.00 |

To Maria Camacho:

| | |
|---|---|
| Statutory damages (Civil Code, § 789.3): | $1,000.00 |
| Compensatory damages: | 1,800.00 |
| Punitive damages: | 5,000.00 |
| Total: | $7,800.00 |

The trial court thereafter heard argument and determined that respondents were entitled to an award of $17,500 as reasonable attorney's fees under Civil Code section 789.3, subdivision (d). Appellant challenges the judgment both as it relates to the award of statutory damages and as it relates to attorney's fees. We affirm.

## BACKGROUND

Appellant owned a 61-unit apartment building at 757 South Berendo Street. Respondents rented a furnished unit in the building in March 1979. When they moved in, the unit was in good condition and the utilities (gas, water and electricity) functioned. Commencing in January 1981, the condition of respondents' apartment and the building in general began to deteriorate. All but one of the electrical outlets in the apartment ceased to function. Respondents were relegated to obtaining all their electricity from a single socket in the bathroom via an extension cord. In addition, the hot water and gas also ceased to function. There were holes in the bathroom ceiling, caused by water seepage from an upstairs apartment and by the activities of appellant's workmen who tried to remedy the seepage problem. Cockroaches and rats entered respondents' apartment through these holes.

Numerous complaints were made to appellant about conditions in the building by respondents and other tenants. As a result of findings in other judicial proceedings involving appellant, of which the court was asked to

take judicial notice, it was stipulated that "at all times during the acts and events alleged in this case, that the premises at 757 South Berendo shall be deemed to have been unfit for human habitation and uninhabitable."

When their complaints to appellant about the condition of the apartment went unheeded, respondents contacted Legal Aid and were advised to withhold rent payments until repairs were made. Respondents paid their rent through March 12, 1981, but did not make payments thereafter. On March 21, 1981, respondents received a letter from appellant in which he threatened to close down the building on April 1, 1981, and shut off all utilities. On April 2, 1981, appellant knocked on respondents' door, then pushed the door open. Appellant announced that he wanted respondents out of the apartment and that he was going to put all their things in the street. Appellant removed the sofa, beds, table and chairs from the apartment. Appellant threatened that if respondents did not leave the apartment by April 4, he would come back and physically remove them with the aid of "cholos."

Respondents, represented by a Legal Aid attorney, obtained a temporary restraining order on April 3, 1981, which restrained appellant from entering their apartment or removing any furniture. Appellant returned on April 4, 1981. He pushed respondents' apartment door open, breaking the door chain and striking Maria Camacho in the face with the door. Jose Camacho handed appellant a copy of the restraining order. Appellant gave the order back to him and said that he did not care about it. He said that he had to fumigate the apartment and that respondents would have to leave. They did not leave because they could not find another apartment.

On April 7, 1981, appellant returned to the apartment with three men. Respondents were not home, but two of their children were. Appellant dumped respondents' food out of the refrigerator, onto the floor, then removed the refrigerator from the apartment. While the refrigerator was being moved, respondents' nine-year-old daughter Lupe was bumped in the face by a small table one of the men was carrying. Lupe developed a nose bleed.

Respondents eventually found another apartment and moved on May 12, 1981. Between April 2 and May 12, they slept on the floor. Maria Camacho became very nervous as a result of appellant's behavior toward the family. She was afraid to leave the apartment. Jose Camacho was also very nervous. He worried about Maria and the children. He called home several times a day and as a result he was fired from his job.

It was stipulated that appellant had been adjudicated in contempt of court for violating the April 3, 1981, restraining order by entering respon-

dents' apartment on April 7, 1981, and removing the refrigerator. He was fined $500 in the contempt proceeding.

Appellant's net worth was shown to be approximately $1.6 million. In addition to the building at 757 S. Berendo, appellant owned several other multi-unit apartment buildings and a residential hotel. He had owned and rented apartments since 1963. He was familiar with the required legal procedures for evicting tenants, but refrained from pursuing an unlawful detainer action against respondents.

## CONTENTIONS ON APPEAL

### I

■ Appellant contends that it was improper to award more than one statutory penalty under Civil Code section 789.3, subdivision (c)(2). The statute in question provides: "(c) Any landlord who violates this section shall be liable to the tenant in a civil action for all of the following: [¶] (1) Actual damages of the tenant. [¶] (2) An amount not to exceed one hundred dollars ($100) for each day or part thereof the landlord remains in violation of this section. In determining the amount of such award, the court shall consider proof of such matters as justice may require; however, in no event shall less than two hundred fifty dollars ($250) be awarded for each separate cause of action. Subsequent or repeated violations, which are not committed contemporaneously with the initial violation, shall be treated as separate causes of action and shall be subject to a separate award of damages."

In *Kinney* v. *Vaccari* (1980) 27 Cal.3d 348 [165 Cal.Rptr. 787, 612 P.2d 877], in reviewing a prior version of the statute,[1] the Supreme Court held that the term "tenant" in the penalty provision of the statute referred to an apartment unit, rather than to the individual occupants of a unit and that only one penalty could be awarded per apartment unit. Respondents argue: (1) that the 1979 amendment of section 789.3 altered the meaning of the word "tenant," and (2) that having failed to raise the issue below, appellant is precluded from doing so now.

We see no legislative intention in the amendment to change the meaning of the word "tenant;" however, respondents' argument that appellant waived the issue by failing to raise it below is well taken.

It is true, as appellant asserts, that an appellate permit a litigant

pure question of law. (*Hale* v. *Morgan* (1978) 22 Cal.3d 388, 394 [149 Cal.Rptr. 375, 584 P.2d 512]; *California Pools, Inc.* v. *Pazargad* (1982) 131 Cal.App.3d 601, 604 [182 Cal.Rptr. 568].) Under the facts of this case, however, it would effect a miscarriage of justice and therefore be inappropriate to do so for the following reasons: After discussing proposed jury instructions, the court explained to counsel that it was going to submit a verdict form to the jury which provided for separate entry of judgment and damages as to each respondent. Counsel for appellant stated that he found the verdict forms were "not only acceptable ... they are sufficient." Furthermore, the jury was instructed, without objection: "Although there are two plaintiffs in this suit, the case of each is separate from and independent of the others. [¶] The instructions govern the case as to each plaintiff so far as they are applicable to him, unless otherwise stated. You will determine each plaintiff's case separately, the same as if you were trying different lawsuits."

During closing argument, respondents' counsel urged the jury to award statutory damages to each of the respondents, arguing that appellant had been in violation of the statute for a total of 40 days—from April 2 to May 12, 1981. In his final argument, appellant's counsel conceded that appellant had removed the furnishings from respondents' apartment, and that he had been in violation of the statute for 40 days. He explained that $100 a day was the maximum statutory penalty, but suggested that the jury award $25 or $30 a day *for each person*. That is apparently precisely what the jury did.

Under the statutory interpretation appellant urges, and under the facts admitted by his counsel, the jury could have awarded total statutory damages of $4,000. Had the jury not been advised to split their verdict as they did, presumably they would have returned a joint verdict of $2,000 statutory damages in favor of both respondents. Having approved the format employed by the court, appellant cannot now challenge the verdict actually rendered by the jury, which was only half of the statutory maximum, and which was awarded in a manner and in an amount urged by his own counsel.

## II

■ Appellant next contends that the award of attorney's fees exceeded the amount owed by respondents to their attorney and therefore gave them an unwarranted windfall. Once more the argument is made for the first time on appeal. In addition, it is based on a factually inaccurate depiction of the fee arrangement. Respondents' fee arrangement with their attorney provided that if attorney's fees were awarded pursuant to Civil Code section 789.3, the attorney would accept that award as full payment of his fees; if respon-

dents recovered damages from appellant, but were not awarded statutory attorney's fees, the attorney would receive a 25 percent contingency fee; and if appellant prevailed, respondents would not owe their attorney anything. Appellant concludes that respondents therefore owed their attorney 25 percent of $15,600, or $3,900, and that the award of $17,500 in attorney's fees provided them with a $13,600 windfall. This analysis, of course, ignores the fact that respondents' fee arrangement contained two contingencies, not one. The second contingency—the 25 percent fee—never arose because the court did award statutory fees and, according to the attorney-client agreement, those fees were then owed to the attorney.

Civil Code section 789.3 provides for an award of "reasonable" attorney's fees. When called upon to determine what are reasonable fees, a contingency fee arrangement between attorney and client is only one factor which the court looks at. (*Vella* v. *Hudgins* (1984) 151 Cal.App.3d 515 [198 Cal.Rptr. 725].) Contrary to appellant's assertion, we see nothing in *Vella* v. *Hudgins, supra,* which suggests that in awarding fees the court is limited by the terms of the attorney-client contract when that contract would result in an award lower than that which the court deems reasonable.

Furthermore, it seems clear that recoveries under Civil Code section 789.3 will typically be small and may be as low as $250. It also seems clear that the provision for reasonable attorney's fees was inserted in the legislation as a matter of public policy to assure access to legal representation for financially disadvantaged tenants such as respondents[2] in precisely the type of factual setting presented by the case at bar.

Respondents' counsel requested a fee of $125 an hour for 178.6 hours' work, or a total of $22,325. Appellant did not assert below his present argument that the award could not exceed the contractual contingency fee. Rather, he argued that the award should not exceed the jury's damage verdict and urged a fee award of no more than $15,000.

In concluding that $17,500 was a reasonable amount for attorney's fees, the court stated that it had reviewed the submitted time records and itemization of services and had concluded that quite a bit of the work performed was required because of the litigation position taken by appellant. The court observed that the litigation was "hotly contested" and that most of the contested positions had resulted in rulings adverse to appellant. While recognizing that appellant had a legal right to take the positions he did, the court found that appellant could not then complain when his litigation posture generated additional legal expenses for respondents.

---

[2] Respondents both worked as hotel laundry workers. Their monthly rent was $230 for a one-room unit which they shared with their four children.

Appellant also contends, again for the first time, that the court had power to award attorney's fees only for services rendered in connection with the statutory cause of action and not in connection with the other causes of action. We would first note that the statutory provision for attorney's fees applies to awards of damages under Civil Code secton 789.3, subdivision (c), and that subdivision (c) includes provisions for both compensatory damages and the statutory penalty.

More importantly, for our present purposes, not only did appellant fail to raise this issue below at the time that the factual issues were being adjudicated, he has also failed to include in the record on appeal either respondents' written request for attorney's fees and supporting documentation, or his own written opposition to that request. Thus, so far as appears in the record on appeal, there is no factual showing that the award of legal fees covered anything but services rendered in connection with respondents' claims under Civil Code section 789.3.

The judgment is affirmed.

Ashby, J., and Hastings, J., concurred.

A petition for a rehearing was denied July 30, 1987, and appe' petition for review by the Supreme Court was denied September ·