[No. B075060. Second Dist., Div. Four. Feb. 4, 1997.]

WEBER, LIPSHIE & CO., Plaintiff and Appellant, v.
PAUL D. CHRISTIAN, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts IV A, B and D.

646

## COUNSEL

Browne & Woods, Peter W. Ross and Benjamin D. Scheibe for Plaintiff and Appellant.

Brookwell, Karic & Marder, Steven S. Karic, Lascher & Lascher and Wendy C. Lascher for Defendant and Appellant.

**OPINION**

**VOGEL (C. S.), P. J.—**

## I

### INTRODUCTION

When defendant Paul D. Christian (Christian) became a partner in the accounting firm of plaintiff Weber, Lipshie & Co. (Weber, Lipshie), he agreed that in the event he withdrew or was expelled from the partnership he would not, for a period of five years, service any of the accounts serviced by Weber, Lipshie (the restrictive covenant); he further agreed that the damages to the partnership for the loss of fees from any such clients would be measured by doubling Weber, Lipshie's time charges for those clients for the twelve months immediately preceding their loss (the measure of damages or liquidated damages provision). We hold these agreements are lawful and binding on Christian after his expulsion from Weber, Lipshie; we direct that a judgment on a jury verdict in favor of Weber, Lipshie be entered against Christian, to be modified in accordance with the liquidated damages provision.

## II

### SUMMARY

Following Christian's expulsion from Weber, Lipshie, certain clients took their business to Christian. Weber, Lipshie sued Christian for liquidated damages in accordance with the agreement, and Christian cross-complained for breach of contract. The trial court tentatively concluded the liquidated damages provision was an invalid penalty, and instructed a jury to determine whether the terms of the restrictive covenant were reasonable, whether Christian breached the agreement, and if so, the actual damages suffered by Weber, Lipshie. By special verdict the jury found in favor of Weber, Lipshie for actual damages in the amount of $447,136.75, which exactly equaled the adjusted net fees billed to the affected clients during the 12 months preceding Christian's departure. Although the trial court denied Christian's motion for judgment notwithstanding the verdict, the court granted a new trial, on the ground that it was necessary to determine whether Weber, Lipshie had good cause to expel Christian from the partnership. Contrary to the court's previous rulings, the order granting new trial concluded that whether Weber, Lipshie could enforce the restrictive covenant depended upon whether Weber, Lipshie had good cause to expel Christian from the partnership, an issue not previously submitted to or decided by the jury.

Both parties appeal. Christian appeals from the judgment and the order denying his motion for judgment notwithstanding the verdict. He contends primarily that his motion for judgment notwithstanding the verdict should have been granted because there is no substantial evidence that the restrictive covenant is reasonable and enforceable, or that Weber, Lipshie suffered any actual damage; in the alternative, Christian contends there should be a new trial, either on the ground stated by the trial court that Weber, Lipshie must prove good cause for expulsion, or because the trial court committed reversible errors in several evidentiary rulings and jury instructions. Weber, Lipshie appeals from the order granting new trial, contending the trial court misinterpreted applicable law, and that the restrictive covenant is enforceable regardless of the reason for Christian's expulsion. Weber, Lipshie also appeals from the judgment, contending the trial court erroneously failed to enforce the liquidated damages clause.

We conclude Weber, Lipshie's contentions are meritorious. Not only is the restrictive covenant reasonable and enforceable (under New York law, as agreed by the parties), so is the liquidated damages clause (under California law, as agreed by the parties). The trial court erroneously granted a new trial, because we conclude the restrictive covenant is enforceable under New York law regardless of the reason Christian was expelled. There is no merit to Christian's contentions seeking reversal of the jury verdict for alleged errors in evidentiary rulings or instructions. We therefore reverse the order granting new trial, and we direct that a new judgment be entered against Christian in an amount calculated under the liquidated damages provision.

### III

#### FACTUAL AND PROCEDURAL BACKGROUND

Weber, Lipshie, formed by a merger in 1968, was a partnership of accountants with branches in New York and Los Angeles; it had a heavy emphasis on clients in the apparel industry. Christian began his career as an accountant in New York in the 1960's; he moved to California in the 1970's and worked in private industry and as a management and business consultant. In February 1986 he was hired by the Los Angeles office of Weber, Lipshie, with the hope that through his contacts in the apparel industry he could bring some new business to the partnership and would become a partner. He was made a partner in April 1987, and signed the partnership agreement in October 1987.

The pertinent provisions of the signed partnership agreement are the following.

*Expulsion.* "The Partners . . . may expel a Partner by a vote of eighty-five per cent (85%) of the remaining Partnership units." There is no requirement that expulsion be for cause. There is a provision that *if* the expulsion is for good cause the expelled partner shall forfeit his capital account and receive no benefits, but Weber, Lipshie was not seeking to forfeit Christian's capital account. There is a provision that *if* expulsion is *not* for good cause, the expelled partner shall receive the retirement benefit he would have received if he retired at the age of expulsion, but this provision was inapplicable because Christian was not old enough to be eligible for retirement benefits. Although evidence was introduced at trial concerning the circumstances of Christian's expulsion, it was Weber, Lipshie's contention throughout the trial, with which the trial court agreed until changing its mind after the verdict, that the restrictive covenant applied regardless of the reason for expulsion, and therefore the existence of good cause need not be determined.

*Competition.* "In the event a Partner retires from, is expelled or withdraws because of disability or otherwise, the retiring, expelled or withdrawing Partner shall not service or solicit, or become associated with any firm . . . which services or solicits any of the accounts then being serviced by the Partnership, . . . for a period of five (5) years."

*Damages.* "[I]f the retiring, expelled or withdrawing Partner takes a client of the Partnership with him to another firm, or services such client as an individual practitioner . . . , the Partnership may offset any loss of fees resulting from the loss of such client, from any and all amounts owed to the retiring, expelled or withdrawing Partner by the Partnership. It is agreed that such loss of fees shall be measured by the amounts of time charges recorded by the Partnership for the 12 months immediately preceding the loss of the client, multiplied by a factor of two. . . . If such charges when deducted from amounts otherwise due to the withdrawn Partner result in a net balance owing from the withdrawn Partner, he shall repay that balance in thirty-six (36) equal monthly installments."

*Governed by New York law.* "This Agreement shall be governed by the laws of the State of New York."

Christian performed satisfactorily until 1991 and brought new business to Weber, Lipshie, including former clients of Christian who became clients of Weber, Lipshie because Christian was there. In 1991, Weber, Lipshie suffered a crisis. The New York partners, upset about the division of profits and cost of malpractice insurance, filed an action to dissolve Weber, Lipshie. Some of the Los Angeles partners organized a new partnership (the Perlberg Company) in case Weber, Lipshie dissolved. Eventually the dispute with the

New York partners was resolved, but Christian was expelled from the firm. Although during trial the court agreed with Weber, Lipshie that good cause was not required and therefore the jury need not determine the reasons for Christian's expulsion, evidence concerning the reasons was introduced. Christian's theory was that he was expelled because he refused to sign the Perlberg agreement when it was presented to him with an ultimatum by Mr. Perlberg on May 28, 1991, " 'If you don't sign this agreement by the end of the meeting, you're out.' " Weber, Lipshie's theory was that Christian was expelled because he made disparaging criticisms of other partners, told clients and prospective clients that Weber, Lipshie was dissolving, and attempted to recruit other partners and employees to join with him in a new firm. On June 6, 1991, Christian was asked to resign. He did not do so, and on June 11, 1991, he was expelled by the unanimous vote of the other partners.

Within a short period, Christian formed his own practice. Several clients of Weber, Lipshie who worked with Christian during or before the time he went to Weber, Lipshie wanted Christian to handle their business. They took their business to him when they learned he was no longer at Weber, Lipshie but on his own.

Weber, Lipshie filed this action seeking damages pursuant to the liquidated damages provision. Evidence was introduced as to the amount of liquidated damages before the trial court tentatively ruled the liquidated damages clause was unenforceable. Weber, Lipshie claimed the amount billed to the affected clients during the 12 months preceding their departure to Christian was $564,234.98, which should be doubled to $1,128,469.96. Christian pointed out that $564,234.98 was "gross billings," and asserted the correct figure, before doubling, should be $447,136.75, the "adjusted net fees." This was because the liquidated damages clause contained the additional proviso, "Such charges shall be valued at expected realizable values in accordance with past practice." Subsequently the trial court instructed the jury to assume that the court had held the liquidated damages clause unenforceable and to determine Weber, Lipshie's actual damages. Expert opinion testimony as to actual damages was introduced.

The trial court determined that under New York law the enforceability of the restrictive covenant depends upon its reasonableness, which is a factual determination for the jury depending upon all the circumstances and a variety of factors. The court instructed the jury on the factors and told the jury to determine if the restrictive covenant was reasonable. Expert opinion on the reasonableness of the restrictive covenant was introduced. The jury was *not* instructed to determine whether there was good cause to expel

Christian from Weber, Lipshie. In answer to a jury question during deliberations, the court instructed that Weber, Lipshie was entitled to expel Christian with or without cause and did not breach the agreement by doing so.

By special verdict the jury found the restrictive covenant was reasonable, that Christian violated it, and that Weber, Lipshie's actual damages were $447,136.75.

After the verdict, however, the trial court changed its mind about whether the restrictive covenant could be enforced against Christian if Christian was expelled from Weber, Lipshie without good cause. Citing a New York case involving forfeiture of an employee's pension benefits, the trial court concluded that New York law would not permit Weber, Lipshie to enforce the agreement if Weber, Lipshie expelled Christian without good cause. Because that issue had not been determined by the verdict, the court ordered a new trial.

## IV

### Discussion

### A, B*

. . . . . . . . . . . . . . . . . . . . . . . . . . . .

### C

*Under California Law, the Measure of Damages Clause Is Not an Unreasonable Penalty Provision*

Although the agreement provides it shall be governed by New York law, both parties agreed during the trial that the question whether the measure of damages clause constitutes an invalid penalty should be decided by *California* law. This occurred because Christian claimed California had a "strong public policy" against penalty clauses which should be followed regardless of the agreement's choice-of-law provision, and Weber, Lipshie expressly acquiesced in that view. In light of this manner in which the question was briefed below, we also base our decision on California law.

The trial court *never finally decided* whether the measure of damages provision was an invalid penalty. It *tentatively* decided it was unenforceable, but then concluded it need not actually decide that issue unless the jury first

*See footnote, *ante*, page 645.

found that the restrictive covenant was reasonable and was breached by Christian. The court told the jury to assume it was unenforceable and to determine actual damages instead. After the jury rendered its verdict, however, the trial court did not finally determine the penalty issue, because it granted a new trial. The issue is properly before us, however, upon Weber, Lipshie's appeal from the judgment.

■■■ Christian relies on *Garrett* v. *Coast & Southern Fed. Sav. & Loan Assn.* (1973) 9 Cal.3d 731 [108 Cal.Rptr. 845, 511 P.2d 1197, 63 A.L.R.3d 39], as stating the applicable rules governing liquidated damages versus penalties. But the statutory law governing liquidated damages was revised after *Garrett.* In 1977 the Legislature revised Civil Code section 1671, so as to replace the former policy of presumptive *invalidity* of liquidated damages clauses (*Garrett, supra,* 9 Cal.3d at p. 734, fn. 1, quoting former Civ. Code, § 1670) with a policy of presumptive *validity.* (*H. S. Perlin Co.* v. *Morse Signal Devices* (1989) 209 Cal.App.3d 1289, 1299 [258 Cal.Rptr. 1]; 1 Witkin, Summary of Cal. Law (9th ed. 1987) Contracts, §§ 528, 530, pp. 470, 471; Cal. Law Revision Com. com., 9 West's Ann. Civ. Code (1985 ed.) § 1671, pp. 497-499.) Among the reasons favoring such provisions is reduction of litigation. (1 Witkin, Summary of Cal. Law, *supra,* at p. 470.)

Subdivision (b) of Civil Code section 1671 states a presumption of validity of a liquidated damages clause, and places the burden on the party who seeks invalidation to show that ". . . the provision was unreasonable under the circumstances existing at the time the contract was made."[2] The instant partnership agreement among accountants is not a consumer transaction under subdivision (c), which would invoke the stricter requirements of prior law restated in subdivision (d). ■■■ "Unlike subdivision (d), subdivision (b) gives the parties considerable leeway in determining the damages for breach. All the circumstances existing at the time of the making of the contract are considered, including the relationship that the damages provided in the contract bear to the range of harm that reasonably could be anticipated at the time of the making of the contract. Other relevant considerations in the determination of whether the amount of liquidated damages is so high or so low as to be unreasonable include, but are not limited to, such matters as the relative equality of the bargaining power of the parties, whether the parties were represented by lawyers at the time the contract was made, the anticipation of the parties that proof of actual damages would be costly or inconvenient, the difficulty of proving causation and foreseeability, and

---

[2]Civil Code section 1671, subdivision (b) provides, "Except as provided in subdivision (c), a provision in a contract liquidating the damages for the breach of the contract is valid unless the party seeking to invalidate the provision establishes that the provision was unreasonable under the circumstances existing at the time the contract was made."

whether the liquidated damages provision is included in a form contract." (Cal. Law Revision Com. com., 9 West's Ann. Civ. Code, *supra*, § 1671 p. 498.)

■ The provision here states, "It is agreed that such loss of fees shall be measured by the amounts of time charges recorded by the Partnership for the 12 months immediately preceding the loss of the client, multiplied by a factor of two." Even without the aid of extrinsic testimony or expert opinion, the provision on its face demonstrates a reasonable estimate of the harm that might reasonably be anticipated from the loss of the firm's clients. It involves the income previously generated from the clients multiplied by a factor suggesting a period of time the clients might otherwise have remained with the firm or continued to generate business. Gary Fineman, one of Weber, Lipshie's partners, and Raymond Schultz, Weber, Lipshie's expert, both testified the multiple of twice annual billings was a *conservative* estimate of the actual loss reasonably to be anticipated. Fineman testified the firm normally anticipates holding on to a client for more than three years. Christian's expert, Kip Jones, had contrary opinions about the economic validity of using a multiple of billings to estimate actual losses reasonably to be anticipated. Although he admitted that two times annual billings was within a normal range for valuing an accounting business for the purpose of buying or selling it, he believed the purchase and sale analogy was not a good one. This shows only that different economists might have different solutions if they were drafting a liquidated damages clause; this does not show that the parties *here*, who *agreed* to this measure of damages, did not make a reasonable estimate of the harm reasonably to be anticipated.

■ Christian's main contention is that certain deposition testimony of Raymond Phillips and Abraham Nowick, as drafters of the partnership agreement, proves that the measure of damages clause was intended as a penalty. This argument lacks merit for several reasons. The intentions of the drafters of the original partnership agreement are irrelevant if not disclosed to the signers of the agreement. (*Ribiero* v. *Dotson* (1960) 187 Cal.App.2d 819, 821 [9 Cal.Rptr. 909].) When the partners subsequently signed the agreement, their intention must be based on the language of the agreement and the circumstances surrounding the signing. Christian, who signed the agreement years after its drafting, agreed to the measure of damages clause, which on its face appears a reasonable estimate of the harm reasonably to be anticipated. There is no suggestion Christian was aware of the uncommunicated intentions of Phillips and Nowick. Christian relies on the following statements by Phillips: " '[W]e wanted . . . to make it difficult and possibly, if we could, impossible for a partner who chose to leave the firm to take with impunity some of the firm's clients and practice outside of the firm . . . ,' "

and " '[W]e wanted to have the ability, if we could, to impose a money penalty. And the question was how much, and we debated should it be X or Y or Z, and we subjectively arrived at the factor of two' "; and on the following statements by Nowick: " 'The two times factor is designed to discourage a partner of the firm leaving and taking the firm's business with him. It is not designed for economic purposes, it is to prevent him from doing it. . . . In effect, the provision was there not because we wanted that money. We wanted to prevent the action. It is a punitive kind of imposition. We make no bones about it, I certainly do not. We don't normally expect to sell a practice or buy one at two times the amount.' " A liquidated damages provision is not invalid merely because it is intended to encourage a party to perform, so long as it represents a reasonable attempt to anticipate the losses to be suffered. (1 Witkin, Summary of Cal. Law, *supra*, at p. 470.) A court will interpret a liquidated damages clause according to its substance, and if it is otherwise valid, will uphold it even if the parties have referred to it as a penalty. (*Dyer Bros. I. Wks.* v. *Central I. Wks.* (1920) 182 Cal. 588, 593 [189 P. 445]; *Dyer Bros. G. W. I. Wks.* v. *Central I. Wks.* (1925) 72 Cal.App. 202, 205 [237 P. 386].) As permitted by Code of Civil Procedure section 2025, subdivision (q), Phillips and Nowick changed the transcripts of their deposition testimony. To his statement "we wanted . . . to impose a money penalty," Phillips added, "that is, fair value." To his statement that "we wanted . . . to make it difficult and possibly, if we could, impossible for a partner who chose to leave the firm to take with impunity some of the firm's clients and practice outside the firm," Phillips added, "we wanted the partner who departed to pay a fair value for the business we would lose." To his statement that "[w]e don't normally expect to sell a practice or buy one at two times the amount," Nowick added, "Although two times earnings is certainly not an unreasonable approximation of the funds which would be lost by the firm."

Christian admitted that he read the agreement before he signed it, that he had previously consulted an attorney about a similar agreement Harold West made with Weber, Lipshie, and that he signed the agreement in order to obtain the benefits of partnership.

■ Given the current statutory policy which favors the validity of such agreements except in certain consumer transactions, and which casts the burden on the opposing party to prove unreasonableness and requires only that the liquidated damages bear a reasonable relationship to the range of harm that might reasonably be anticipated, we find no public policy reason why Christian should not be held to the measure of damages to which he agreed. The trial court erred in failing to enforce the measure of damages clause. The matter should be remanded for entry of a judgment against

Christian in the amount specified by the agreement. If the parties dispute the amount which should be doubled pursuant to the agreement, the trial court should conduct a partial new trial limited to that issue.

Our conclusion that the liquidated damages provision is enforceable renders moot Christian's contention that there is no substantial evidence Weber, Lipshie suffered *any* actual damages.[3]

### D

*Christian Suffered No Prejudice From Evidentiary Rulings and Jury Instructions**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### E

*Failure to Raise California's Prohibition Against Restrictive Covenants Below Bars Its Application on Appeal*

██ After we filed our opinion, Christian timely filed a petition for rehearing urging that the choice of law provision of the partnership agreement violates California's public policy that "every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void." (Bus. & Prof. Code, § 16600.) Although this issue was never argued during the trial or raised in the briefs on appeal, we granted a rehearing to consider this new theory because it implicates a question of statutory public policy. (*Fisher* v. *City of Berkeley* (1984) 37 Cal.3d 644, 654 [209 Cal.Rptr. 682, 693 P.2d 261].)

Christian candidly concedes that he was aware of California's public policy but specifically suggested applying New York law in the course of seeking a summary judgment. In short, Christian was neither ignorant nor misled about the theory he belatedly raises now. However, California's posture regarding contracts inhibiting the conduct of one's trade, profession, or business is explicitly established by statute and confirmed by legions of cases and we must decide if that policy prevails over any countervailing considerations.

---

[3]Christian's argument is based on the theory that *all* the clients would have left Weber, Lipshie anyway, if Christian was no longer available for any other reason, for instance, retirement. There was substantial evidence from which the jury could have inferred that at least one or more of the clients would have remained with Weber, Lipshie if Christian was not available. (*Xum Speegle, Inc.* v. *Fields* (1963) 216 Cal.App.2d 546, 556-557 [31 Cal.Rptr. 104].)

*See footnote, *ante,* page 645.

■ When a contract provides a choice of law other than California law, its enforcement involves a two-step analysis: (1) the foreign law must bear some substantial relationship to the parties or the contract and (2) application of the foreign law must not violate a strong policy of California law. (*Nedlloyd Lines B.V.* v. *Superior Court* (1992) 3 Cal.4th 459, 479 [11 Cal.Rptr.2d 330, 834 P.2d 1148].) Here there is no real question that the parties have a substantial relationship to New York law. Weber, Lipshie maintains offices in New York and California. Neither party contends that there was no rational basis for choosing New York law as controlling the partnership agreement. ■ However, both parties recognize that application of the restrictive covenant according to New York law produces a result contrary to a fundamental public policy of this state. This is so because the restrictive covenant does not provide for any geographical limitation and we are not inclined to superimpose one in the absence of any evidence that the parties intended any such limitation when the agreement was executed.[6]

Weber, Lipshie contends that Christian cannot consciously rely on New York law throughout the trial and the appeal and now be allowed to fall back on California law simply because he suffered an adverse result. It is established law that, "[W]here a deliberate trial strategy results in an outcome disappointing to the advocate, the lawyer may not use that tactical decision as the basis to claim prejudicial error." (*Mesecher* v. *County of San Diego* (1992) 9 Cal.App.4th 1677, 1686 [12 Cal.Rptr.2d 279].) There is a ring of justice in Weber, Lipshie's argument considering the significant degree to which Christian's election shaped the scope of the litigation.

Although Christian relied on New York law during the trial and the appeal, he now invokes California's Business and Professions Code section 16600 on a petition for rehearing, claiming he may do so because its application raises a pure question of law. In *Camacho* v. *Schaefer* (1987) 193 Cal.App.3d 718 [238 Cal.Rptr. 609], an appellant was precluded from raising a pure issue of law on appeal when it had not been asserted in the trial court. There, in a landlord-tenant dispute, a trial court awarded damages calculated pursuant to Civil Code section 789.3, by multiplying the statutory

[6]Weber, Lipshie contends in its supplemental brief on rehearing that application of California law would produce the same result because Christian would not be permitted to practice in Los Angeles County. To support that proposition it cites *Swenson* v. *File* (1970) 3 Cal.3d 389 [90 Cal.Rptr. 580, 475 P.2d 852], which invoked the rule of severability to impose geographical limitations on a restrictive covenant, making it enforceable under Business and Professions Code section 16602. We note that *Swenson* involved a partnership agreement that included a geographical limitation of a 20-mile radius of the partnership's office. Arguably that provision influenced the *Swenson* court's decision. For that reason we decline to apply that holding to this case.

amount of $100 per day by the number of tenants. On appeal, the landlord argued for the first time that the Supreme Court had interpreted Civil Code section 789.3 to permit damages according to apartment units, not tenants, and on that basis challenged the calculation of damages. Relevant to the issue before us, the *Camacho* court held, "an appellate tribunal will, on occasion, permit a litigant to raise for the first time on appeal an issue presenting a pure question of law." (193 Cal.App.3d at pp. 722-723.) The court went on to hold, "Under the facts of this case, however, it would effect a miscarriage of justice and therefore be inappropriate to do so" for reasons applicable here. (*Id.* at p. 723.)

As in *Camacho*, Christian actively urged the trial court to apply New York law; made a conscious strategic decision to forego the application of California's "public policy" which voids restrictive covenants; and submitted jury instructions specifying that New York law applied. Christian deliberately rejected the application of Business and Professions Code section 16600 et seq., believing that New York law was more favorable to his position. Arguably Christian was concerned that Weber, Lipshie could invoke the geographical exemptions which could preclude Christian from conducting his accountancy practice in Los Angeles County, impairing his ability to service former clients in any event. However, Christian's reason for asserting New York law instead of California law is purely a matter of speculation, but the fact that he did so is not.[7]

We are mindful of the admonition of the provision of Civil Code section 3513 that ". . . a law established for a public reason cannot be contravened by a private agreement." Also, we do not quarrel with the assertion that Business and Professions Code section 16600 was adopted for a public reason. It follows that Christian could not by agreement waive the benefit afforded under California law. However, Christian's conduct here was not

[7]In one of Christian's pretrial briefs he asserted: "In paragraph 39 of the [Partnership] Agreement, the [Weber, Lipshie] partners agreed that the laws of New York shall govern the agreement, and there is no reason now to disturb that choice of law provision.[Fn.]2" Footnote 2 states: "California Courts follow contractual choice of law provisions when enforcement of the contract under the laws of the chosen state does not contradict California's settled public policy or laws protecting the rights of California citizens. [Citation.] The application of New York law here has the potential of implicating Section 16600 of the California Business & Professions Code ('B & P Code'). That section . . . represents a 'strong public policy' of the state, typically requiring contracts containing restrictive covenants to be governed by California law. [Citations.] However, one of the statutory exceptions to the general policy against restrictive covenants is found in Section 16602 of the B & P Code which, in certain circumstances, permits restrictive covenants among partners in a partnership. Thus, while Section 16600 provides a strong public policy requiring the application of California law, Section 16602 is the statutory exception which takes the Agreement here out of the purview of California's 'strong public policy,' and requires the parties' choice of New York law to be followed. [Citation.]"

simply a waiver of this state's law by agreement. It was an intentional election repeatedly made in the course of protracted litigation. As in *Camacho* v. *Schaefer, supra*, 193 Cal.App.3d 718, there is no reason why we are compelled to exercise our discretion in favor of Christian and consider what he has characterized as a pure question of law under the circumstance presented by this record. In other words, Christian is in no better position to obtain a rehearing in this court following an appeal by raising a new question of law than the landlord in *Camacho* was when he tendered on appeal a question of law that was not raised in the trial court. In fact, we believe his position is considerably worse. Christian deliberately shaped the contours of this case to fit the pattern of New York law inducing Weber, Lipshie, the trial court, and this court to follow his lead. The applicable axiom here is: "enough is enough"! Allowing Christian to invoke a provision of California law he consciously rejected in all prior proceedings would be contrary to our adversary system and would result in a miscarriage of justice. (Cf. *Mesecher* v. *County of San Diego, supra*, 9 Cal.App.4th at pp. 1686-1687.) Accordingly, we decline his request to apply Business and Professions Code section 16600.

## V

### DISPOSITION

The order granting a new trial is reversed. The order denying Christian's motion for judgment notwithstanding the verdict is affirmed. The judgment on the jury verdict is affirmed as to liability but reversed as to damages. The trial court is directed to conduct such further proceedings as may be necessary to determine the measure of damages in accordance with the formula contained in the partnership agreement, and to enter judgment against Christian in that amount. Weber, Lipshie is awarded costs on appeal.

Hastings, J., and Rubin, J.,* concurred.

The petition of appellant Paul D. Christian for review by the Supreme Court was denied April 23, 1997.

---

*Judge of the Municipal Court for Santa Monica Judicial District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.