Filed 4/2/15  Florez v. Yim CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| HERMINA FLOREZ et al., | B255766 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. BC471407) |
| v. | |
| DONG YIM et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County,

William F. Fahey, Judge.  Reversed.

Lipow & Harris and Jeffrey A. Lipow for Plaintiffs and Appellants.

Law Offices of Alex Cha and Alex M. Cha for Defendants and Respondents.

Appellants Hermina Florez and Claudia Zaragoza appeal from the trial court's order reducing a judgment in their favor. Appellants sued the owners of a laundromat for wage and hour violations and wrongful termination. At a mandatory settlement conference, appellants and respondents agreed on a settlement amount -- $175,000 -- and a payment schedule. The settlement agreement provided that, if respondents did not pay the agreed-upon settlement amount, appellants could enter a stipulated judgment for $300,000. Respondents paid $58,000 of the $175,000 but then defaulted on the final balloon payment of $117,000, and appellants had the court enter the stipulated judgment. The court later reduced the amount of the judgment, finding that the additional $125,000 was an impermissible penalty under Civil Code section 1671, subdivision (b) and applicable law. We reverse because the Civil Code presumes a liquidated damages provision to be valid and places the burden of proving it *invalid* on the party challenging the liquidated damages. Respondents here made no showing at all. Thus, they failed to carry their burden of proof.

### FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs and appellants Hermina Florez and Claudia Zaragoza, a mother and daughter, worked for several years at a laundromat in Wilmington owned by defendants and respondents Dong Yim, Stan Chu, and SCGY Investment Inc., doing business as Y&C Coin Laundry (collectively SCGY). Florez says she worked fifteen hours a day -- from 5:00 p.m. to 8:00 a.m. -- seven days a week. Zaragoza says she worked nine hours a day -- from 8:00 a.m. to 5:00 p.m. -- seven days a week. SCGY paid appellants $2,000 each month in cash, to be divided between them. Wages of one thousand dollars a month for those hours worked amounts to less than $2.25 an hour for Florez and about $3.70 an hour for Zaragoza.[1]

---

[1]     A written employment agreement appears in Appellants' Appendix (at page 170). The named parties to the agreement are SCGY (Employer) and Guillermina Zaragoza and Claudia Osegueda (Employees). The signatures on the agreement are "Guillermina Zaragoza" and "Angelita Ramirez." There is no signature on the line under "Employer, SCGY Investment Inc." Appellants' attorney told the trial court that SCGY produced this agreement in discovery. The agreement requires the employees to

2

In October 2011, appellants sued SCGY.  They alleged violations of Labor Code provisions requiring payment of the minimum wage and overtime, as well as the maintenance of payroll records.  Appellants also asserted a cause of action for unfair business practices.  SCGY fired appellants after they filed suit.  In December 2011 appellants filed an amended complaint, adding a cause of action for wrongful termination.  As of September 2012, appellants calculated their damages as more than $510,000, consisting of unpaid regular wages and overtime of $192,576, liquidated damages in the same amount, prejudgment interest of $35,000, paystub violations of $8,000, waiting time penalties of $7,268, attorneys' fees of $75,000, and punitive damages.

In September 2012 the parties attended a mandatory settlement conference.  Two attorneys appeared at the conference for SCGY, SCGY's business attorney and its trial attorney.  According to appellants' lawyer, SCGY said all its assets were "leveraged" and it threatened it would declare bankruptcy or its principals would leave the United States for Korea if appellants received a verdict in their favor.  Appellants were worried about whether they could collect any judgment. The parties agreed to resolve the case for $175,000. SCGY agreed to a payment schedule:  $50,000 within ten days of the settlement conference; $1,000 each month for the next eight months; and a final payment on July 1, 2013, of the balance of $117,000.  At the settlement conference, SCGY also signed a stipulated judgment for $300,000.  The parties agreed that appellants would not file the stipulated judgment if SCGY paid the $175,000 as agreed.  However, if SCGY defaulted on its obligations, the settlement agreement authorized appellants to file the stipulated judgment.

SCGY made the initial payment and the eight monthly payments.  But SCGY failed to make the final balloon payment of $117,000.  SCGY apparently claimed that it was trying to sell some properties or get a loan to make the final payment.  Appellants notified SCGY of its default and then -- in July 2013 -- submitted the stipulated

hold SCGY harmless for "any damages or mishaps that may arise."  It also states that SCGY can terminate the agreement "at any time [in its] sole discretion."

3

judgment for $242,000 ($300,000 less the $58,000 SCGY had paid) to the court. The court signed and filed the judgment on July 24, 2013.

Appellants then apparently tried to collect from SCGY. In October and November 2013, respectively, appellants filed motions for assignment of rents and for appointment of a receiver. SCGY filed opposition, asserting for the first time -- more than a year after the settlement conference -- that the $125,000 amount included in the stipulated judgment above and beyond the agreed-upon settlement figure of $175,000 was an unenforceable penalty. The parties briefed the issue. The court heard argument on February 24, 2014. On March 4, 2014, the court issued its order reducing the amount of the judgment to $117,000. The order stated that the stipulated judgment constituted an unenforceable penalty under *Greentree Financial Group, Inc. v. Execute Sports, Inc.* (2008) 163 Cal.App.4th 495 (*Greentree*).

## *APPELLANTS' CONTENTIONS*

Appellants contend the trial court improperly placed the burden of proof on them to demonstrate that the stipulated judgment provision of the settlement agreement was valid. Appellants argue that Civil Code section 1671, subdivision (b) puts the burden of proof on the party challenging enforcement of a liquidated damages provision -- here, respondents. Appellants also contend that *Greentree* is distinguishable and that *Greentree* was wrongly decided in any event.

## *DISCUSSION*

Whether the amount to be paid for breach of a contractual term should be treated as liquidated damages or as an unenforceable penalty is a question of law. We review it de novo. (*Harbor Island Holdings v. Kim* (2003) 107 Cal.App.4th 790, 794.)

Until 1977, Civil Code section 1670 provided, "Every contract by which the amount of damages to be paid, or other compensation to be made, for breach of an obligation, is determined in anticipation thereof, is to that extent void, except as expressly provided in [section 1671]." Section 1671 read, " 'The parties to a contract may agree therein upon an amount which shall be presumed to be the amount of damage

4

sustained by a breach thereof, when, from the nature of the case, it would be impracticable or extremely difficult to fix the actual damage.' "

In 1977 the Legislature revised the law of liquidated damages by repealing Civil Code sections 1670 and 1671 and enacting a new section 1671, operative July 1, 1978. "The revised statute (citation) change[d] the law by declaring a general rule of *validity* of a liquidated damage provision, a rule that can be overcome if the party seeking to invalidate the provision establishes unreasonableness." (1 Witkin, Summary of Cal. Law (10th ed. 2005) Contracts, § 503, p. 553 [*Witkin*] [emphasis in original]. See also *Weber, Lipshie & Co. v. Christian* (1997) 52 Cal.App.4th 645, 654 ["In 1977 the Legislature revised Civil Code section 1671, so as to replace the former policy of presumptive *invalidity* of liquidated damages clauses [citation] with a policy of presumptive *validity*"] (emphasis the court's).) Civil Code section 1671, subdivision (b) now provides, "Except as provided in subdivision (c) [concerning consumer cases and leases of dwellings], a provision in a contract liquidating the damages for the breach of the contract is valid unless the party seeking to invalidate the provision establishes that the provision was unreasonable under the circumstances existing at the time the contract was made."

The Law Revision Commission, following a study, concluded that liquidated damages provisions are useful and should be encouraged for a number of reasons. (*Witkin,* § 533 p. 578.) One of those reasons is "[a] party may fear that, without such a provision, the other party will lack incentive to perform." (*Ibid.*) A liquidated damages provision is not invalid merely because it is intended to encourage a party to perform, so long as it represents a reasonable attempt to anticipate the losses to be suffered. (*Californians for Population Stabilization v. Hewlett-Packard Co.* (1997) 58 Cal.App.4th 273, 289.) According to the Law Revision Commission Comments:

> "In the cases where subdivision (b) applies, the burden of proof on the issue of reasonableness is on the party seeking to invalidate the liquidated damages provision. The subdivision limits the circumstances that may be taken into account in the determination of reasonableness to those in existence "at the

5

time the contract was made." . . . [S]ubdivision (b) gives the parties considerable leeway in determining the damages for breach. All the circumstances existing at the time of the making of the contract are considered, including the relationship that the damages provided in the contract bear to the range of harm that reasonably could be anticipated at the time of the making of the contract. Other relevant considerations in the determination of whether the amount of liquidated damages is so high or so low as to be unreasonable include . . . the relative equality of the bargaining power of the parties, whether the parties were represented by lawyers at the time the contract was made, the anticipation of the parties that proof of actual damages would be costly or inconvenient, the difficulty of proving causation and foreseeability, and whether the liquidated damages provision is included in a form contract."

(Law Revision Commission Comments, 1977 Amendment.)

Accordingly, under the plain language of the statute, SCGY bore the burden of proof here of demonstrating that the liquidated damages and stipulated judgment provisions of its settlement agreement with appellants were "unreasonable under the circumstances existing at the time the contract was made." (Civ. Code, § 1671, subd. (b).) SCGY's submission in the trial court consisted only of copies of the settlement agreement and the stipulated judgment, together with its attorney's declaration authenticating those documents. SCGY submitted no evidence whatsoever in any effort to meet its burden of proof. Here, SCGY's bargaining power in negotiating and signing the settlement agreement was at least equal to that of appellants, two unsophisticated workers. SCGY was represented at the settlement conference by counsel of its choice. The settlement agreement was not a form contract; rather, it was specifically negotiated and drafted to resolve the parties' dispute here. The stipulated judgment provision legitimately provided an incentive for SCGY to perform -- to make the agreed-upon payments. The Law Revision Commission expressly recognized this goal as a valid one, encouraging settlement.

6

Nor did SCGY carry its burden of proving that the liquidated damages amount bore "no reasonable relationship to the range of actual damages that the parties could have anticipated would flow from a breach." (*Ridgley v. Topa Thrift & Loan Assn.* (1998) 17 Cal.4th 970, 977.) In the absence of any showing by the party bearing the burden of proof, we may presume a reasonable relationship. For example, appellants and their attorney may have anticipated that substantial attorney time -- and therefore fees -- would be necessary to try to recover the agreed-upon amount from SCGY if it breached and failed to pay what it had agreed to pay. That prediction has been borne out, as appellants have now been seeking for nearly two years to obtain the money promised them -- a process involving motions for receivers and assignment of rents as well as an appeal.

In sum, when the party to whom the Legislature has assigned the burden of proof fails to present any evidence to meet its burden, the presumed validity of a liquidated damages provision will be enforced. (Cf. *Weber, Lipshie & Co. v. Christian, supra,* 52 Cal.App.4th at p. 656 [enforcing liquidated damages of twice the actual damages; "[g]iven the current statutory policy which favors the validity of such agreements except in certain consumer transactions, and which casts the burden on the opposing party to prove unreasonableness and requires only that the liquidated damages bear a reasonable relationship to the range of harm that might reasonably be anticipated, we find no public policy reason why [former partner] should not be held to the measure of damages to which he agreed"]; *O'Connor v. Televideo System, Inc.* (1990) 218 Cal.App.3d 709, 718 [party challenging provision "must establish that the charge was unreasonable before we can conclude that it should be invalidated"; challenger "wholly failed to establish that the charge was unreasonable under the circumstances existing at the time it was made"].)

Finally, *Greentree* – on which SCGY relies -- did not involve a failure to present any evidence by the party bearing the burden of proof, as we have here. It is therefore inapposite.

7

## *DISPOSITION*

The trial court's order reducing the amount of the judgment in appellants' favor is reversed.  The court is directed to reinstate the stipulated judgment entered July 24, 2013, in appellants' favor for $242,000.  Appellants are entitled to recover their costs on appeal.


### *NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS*


EGERTON, J.[*]

WE CONCUR:



KITCHING, Acting P. J.



ALDRICH, J.

---

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.