TRAVELODGE HOTELS, INC., a foreign corporation, Plaintiff,

v.

KIM SHIN HOSPITALITY, INC., a Florida corporation, and Pong Ki Kim, Defendants.

No. 98–002–CIV–ORL–18A.

United States District Court, M.D. Florida, Orlando Division.

Dec. 2, 1998.

Ronald Sturgis Holliday, Mercedes G. Hale, Rudnick & Wolfe, Tampa, FL, for Travelodge Hotels, Inc., plaintiff.

James R. Leone, James R. Leone & Associates, P.A., Heathrow, FL, Brian R. Gilchrist, Allen, Dyer, Doppelt, Milbrath & Gilchrist, P.A., Orlando, FL, for defendants.

## ORDER

SHARP, District Judge.

Plaintiff Travelodge Hotels, Inc. ("THI") brings this instant action against defendants Kim Shin Hospitality, Inc. ("KSH") and Pong Ki Kim ("Kim") alleging breach of a license agreement. In the complaint, the plaintiff seeks compensatory damages, liquidated damages, interest, costs, and attorneys' fees. The defendant counterclaimed, asserting that the plaintiff billed KSH for airline fees and other related charges which were never incurred. In the counterclaim, the defendant seeks compensatory damages, costs and attorney's fees. The case is presently before the court on the plaintiff's motion for summary judgment to which the defendant has responded in opposition. In addition, the defendant has filed a motion for summary judgment on Count III claiming that the liquidated damages provision in the license agreement is unenforceable. Following a review of the case file and the relevant law, the court finds that the plaintiff's motion should be granted and defendant's motion should be denied.

### I. Factual Background

On January 23, 1996, THI's predecessor-in-interest, Forte Hotels, Inc., entered into a License Agreement (the "License Agreement") with Central Park Motel Corp., for

the operation of a 163–room lodging facility (the "facility") located in Orlando, Florida. The defendant bought the facility from Central Park Motel Corp. and entered into an Assignment and Assumption Agreement with THI and Central Park Motel Corp. on October 6, 1996. The Assignment and Assumption Agreement assigned all rights, title and interest in and to the License Agreement to the defendant. Under the License Agreement, the defendant was obligated to operate a Travelodge guest lodging facility for a 20–year term until January 23, 2016, during which time the defendant was permitted to use Travelodge Marks in connection with the operation and use of the facility.

Shortly after entering into the Assignment and Assumption Agreement, the facility failed a quality assurance inspection conducted by THI. Pursuant to Section 6 of the License Agreement, THI could conduct inspections of the facility at all reasonable times to assure compliance with the License Agreement. The defendant claims that the facility was not up to standards because the plaintiff breached a promise to provide a line of credit to finance improvements to the facility. The facility failed another quality assurance inspection several months later.

In addition to failing to meet the quality assurance requirements, THI claims that the defendant refused to make the Periodic Payments required under the License Agreement. Pursuant to Section 3 of the License Agreement, the defendant is obligated to make Periodic Payments to THI reflecting the royalties and advertising fees owed on account of gross revenues received while operating as a Travelodge facility. The defendant claims that it was unable to make the Periodic Payments under the License Agreement because THI did not provide certain support services.

THI terminated the License Agreement on November 26, 1997 and this suit followed. The plaintiff claims that KSH owes THI $105,410.50 for unpaid Periodic Payments and $246,043.80 in liquidated damages. The defendant counterclaimed, seeking damages in the amount of $1,983.35 for overbilling by THI.

## II. Legal Discussion

### A. Summary Judgment Standards

Summary judgment is authorized if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); accord Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249, 106 S.Ct. 2505. "[T]he substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248, 106 S.Ct. 2505.

The moving party bears the burden of proving that no genuine issue of material fact exists. See Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In determining whether the moving party has satisfied the burden, the court considers all inferences drawn from the underlying facts in a light most favorable to the party opposing the motion, and resolves all reasonable doubts against the moving party. See Anderson, 477 U.S. at 255, 106 S.Ct. 2505; Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587–88, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The moving party may rely solely on his pleadings to satisfy this burden. See Celotex, 477 U.S. at 323–24, 106 S.Ct. 2548; Fed.R.Civ.P. 56(c).

"[A]ll that is required [to proceed to trial] is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." Anderson, 477 U.S. at 249, 106 S.Ct. 2505 (quoting First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 288–89, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)). Summary judgment is mandated, however, "against a party who fails to make a showing sufficient to establish the existence of an

element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548.

## B. The Merits of the Summary Judgment Motions

The plaintiff alleges that KSH breached the License Agreement by failing to meet the quality assurance requirements and defaulting on its obligation to make Periodic Payments to THI. THI claims that it is owed $105,410.50 for unpaid Periodic Payments. The defendant asserts that it was unable to make the required payments because THI breached its own obligations under the License Agreement. Specifically, the defendant contends that the plaintiff failed to provide support services to KSH and breached an oral agreement to extend a line of credit to KSH for improvements to the facility. Furthermore, the defendant contests the amount the plaintiff is now claiming and argues that the plaintiff can only recover the specific amount that was pled in the complaint; $88, 746.67. The plaintiff is also seeking $246,043.80 in liquidated damages. The defendant argues that the liquidated damages provision in the License Agreement is a penalty and, therefore, unenforceable. The court will address each of the plaintiff's claims and the defendant's defenses in their respective order.

### 1) Unpaid Periodic Payments

Under the terms of Section 3 of the License Agreement, KSH was obligated to make Periodic Payments to THI reflecting the royalties and advertising fees owed on account of gross revenues received while operating as a Travelodge. At the time of the termination of the License Agreement, plaintiff claims that it was owed $105,410.50 for unpaid Periodic Payments. The plaintiff cal-

culated this amount from the gross room revenues generated from room sales at the facility between October 1996 and November 1997. (Doc. 36, Miller Aff. at ¶ 19). The gross room revenues were obtained from KSH in its Answers to Interrogatories. (Doc. 42, Answer to Interrog. No. 8).

### a) Defendant's Defenses

The defendant does not contest plaintiff's assertion that it failed to make the required Periodic Payments. Instead, defendant argues that plaintiff breached its own obligations under the License Agreement, thereby making it impossible for the defendant to comply with the terms of the License Agreement.

First, the defendant argues that THI does not have standing to bring this action because it is not "a party or assignee of the rights under" the License Agreement. (Doc. 46, Def.'s Resp. at 2). However, THI is a party to the Assignment and Assumption Agreement which assigned all rights, title and interest in and to the License Agreement to KSH. (Doc. 46, Def's Resp., Ex. A). The Assignment and Assumption Agreement states that it supplements and modifies the License Agreement. *See id.* Therefore, because THI is a party to the Assignment and Assumption Agreement and its predecessor-in-interest is a party to the License Agreement, THI has standing to bring this action.

Second, the defendant asserts that the plaintiff breached the License Agreement when it eliminated the facility from THI's central reservation system. As a result of THI's breach, defendant claims that it could not make the facility profitable "and franchise fees were thus impossible to pay." (Doc. 46, Def's Resp. at 4). The defendant refers to two sections of the License Agreement which it claims impose a duty on THI to include the facility in the central reservation system.[1] The defendant's argument

1. The License Agreement states:
   WHEREAS TRAVELODGE has developed and implemented a plan for providing, and has provided, a network of motor hotels and related services of high quality and of distinguishing characteristics ... including (but not limited to) the following:
   ... (4) Methods of operation, referrals and reservation procedures ...

Defendant also refers to Section 12(d) of the License Agreement which states:
   LICENSOR agrees:
   ... (d) To encourage use by the traveling public of those motels and motor hotels operating under licenses from LICENSOR ...

fails, however, because there is no express contractual provision which requires THI to provide any particular reservation system. The License Agreement does not state that defendant's obligation to make Periodic Payments is conditioned on the facility being included in THI's reservation system. The defendant also fails to offer any evidence of an implied obligation to include the facility in the reservation system. Because there was no express or implied legal duty under the License Agreement to include the facility in the central reservation system, the elimination of the facility from the system does not excuse KSH from its obligation to make Periodic Payments. *See Seattle Totems Hockey Club, Inc. v. National Hockey League,* 783 F.2d 1347, 1352–53 (9th Cir.1986). Furthermore, in a letter sent to KSH dated May 22, 1997, Ms. Jodie Monique. Manager of Franchise Administration for THI, states that the reservation system was restricted in March of 1997 because of KSH's failure to make the Periodic Payments. (Doc. 38, Kim Depo., Ex. 3). The defendant does not contest this assertion. (Doc. 46, Def's Resp., Ex. B)

Third, the defendant claims that the plaintiff breached Sections 12(a) and (b) of the License Agreement by failing to provide consultation to KSH and make information available with respect to equipment, furniture, furnishings and supplies. The defendant, however, does not present evidence that would create a question of fact as to whether THI breached Sections 12(a) and (b) of the License Agreement. The only evidence offered is the deposition of Ms. Jane Kim, the corporate representative for KSH. In her deposition, Ms. Kim stated that a Travelodge inspector came to the facility shortly after Mr. Kim's death and was "tremendously helpful" getting the facility "reestablished as a Travelodge." (Doc. 38, Kim Depo. at 52–53). Furthermore, she states that the inspector "inspected the property and . . . said, this is a tool to help you." *Id.* The inspector gave Ms. Kim a list of Travelodge standards and the number for the Travelodge supply company. *Id.* The facility failed the quality assurance inspection because, as Ms. Kim stated, "she had to fail me just because there are certain things that I didn't know about

that I had to do to operate the hotel, that I just threw together." *Id.* at 53.

Fourth, the defendant argues that by conducting the quality assurance inspection and failing the facility after the sudden death of Mr. Kim, THI breached its implied duty of good faith and fair dealing under the License Agreement. Section 21 of the License Agreement provides that it will be interpreted in accordance with the laws of the State of California. Under California law, the implied covenant of good faith "may be breached only when the franchisor deprives the franchisee of its primary right to express contractual benefits owed the franchisee." *In re Sizzler Restaurants Int'l,* 225 B.R. 466, 476 (Bankr.C.D.Cal.1998); *see also Love v. Fire Ins. Exch.,* 221 Cal.App.3d 1136, 1153, 271 Cal.Rptr. 246 (1990). The defendant has offered no evidence that THI breached an express contractual provision. The License Agreement states that inspections may be conducted at all reasonable times. (Doc. 46, Def's Resp., Ex. A). Furthermore, the failed quality assurance inspection on November 21, 1997 was not the sole reason for the termination. The facility had failed a previous inspection and KSH had not made its Periodic Payments to THI. *See id.* at Ex. D. Defendant's assertion that the franchise was terminated "due in large part to an untimely death" is unsupported.

Fifth, the defendant argues that the plaintiff breached an oral agreement to provide a line of credit to KSH. Relying on THI's promise, the defendant claims that it exhausted its own capital funds to improve the property which made it unable to make the Periodic Payments to THI. The defendant, however, does not offer evidence sufficient to create a question of material fact that the alleged breach of the oral agreement made KSH's performance under the License Agreement impossible. The defendant argues that the plaintiff breached a separate oral agreement, but the defendant has not properly stated a counterclaim for breach of contract. Breaching a separate oral agreement is not a defense to plaintiff's breach of contract action. Even if the defendant could show that there was a separate oral agreement that was not barred by the parol evi-

dence rule,[2] the defendant has not offered any evidence that the breach made performance under the License Agreement impossible.

■ Sixth, the defendant asserts that by specifically pleading the exact amount of actual and liquidated damages in its Verified Complaint, the plaintiff is bound by that amount. The defendant claims that because plaintiff is now seeking a greater amount of damages than originally claimed, there must be a factual dispute which precludes summary judgment. Pursuant to the License Agreement, Periodic Payments and liquidated damages are calculated using gross room revenues. The unpaid Periodic Payments and liquidated damages that the plaintiff is now seeking are based upon the gross room revenues as admitted by KSH in its Answers to Interrogatories. Therefore, the amount was adjusted based upon the numbers provided by KSH to THI during discovery. Plaintiff is not bound by the exact dollar figure pled in the Verified Complaint. Furthermore, there is no substantial issue of fact regarding the calculation of these damages that would preclude summary judgment.

### b) Counterclaim

The defendant has asserted a counterclaim for overbilling in the amount of $1.983.35. In its Motion for Summary Judgment, the plaintiff states that it accepts "all facts asserted in [KSH's] counterclaim as true." (Doc.35, Pl.'s Mtn. at 8 n. 4). The defendant does not argue that a greater amount is owed to KSH. Therefore, because there is no factual dispute over the amount owed to KSH for overbilling, a set-off in the amount of $1,983.35 will be made against the unpaid Periodic Payments. With the set-off, KSH owes $103,427.15 for unpaid Periodic Payments.

### 2) Liquidated Damages

It is undisputed that KSH failed to make the Periodic Payments as required by the License Agreement. Based on the monetary default and the two failed quality assurance inspections, THI terminated the License Agreement. If KSH causes a premature termination of the License Agreement, Section 30(k) of the License Agreement requires KSH to pay liquidated damages to THI. The License Agreement provides a formula for calculating liquidated damages that takes into account the gross room revenues for the preceding twelve months and the unexpired term of the License Agreement. Based on the gross room revenues provided by KSH in its Answers to Interrogatories and the License Agreement's unexpired term ' of eighteen years, the plaintiff is claiming $246,-043.80 in liquidated damages.

■ The defendant argues that the liquidated damages provision in the License Agreement is a penalty and, therefore, unenforceable under Florida and California law. Defendant suggests that Florida law should apply because of Florida's public policy against penalty clauses. When the parties indicate in the contract which law shall govern the construction of the contract, that choice of law provision will be given effect as long as the chosen law does not contravene the public policy of Florida. *See Coral Gables Imported Motorcars, Inc. v. Fiat Motors of North Am., Inc.*, 673 F.2d 1234, 1238 (11th Cir.1982). To ascertain whether California law is contrary to Florida public policy, the court should consider whether "the foreign state's law is harmonious in spirit with the forum state's public policy." *Punzi v. Shaker Advertising Agency, Inc.*, 601 So.2d 599, 600 (Fla. 2d DCA 1992)(citing *Wilkinson v. Manpower, Inc.*, 531 F.2d 712 (5th Cir.1976)). Since California law concerning the enforceability of liquidated damages provisions does not contravene any articulated Florida public policy, California law will be applied.[3]

■■ Under California law, "a provision in a contract liquidating the damages is valid unless the party seeking to invalidate the provision establishes that the provision was unreasonable under the circumstances exist-

---

2. The defendant has not offered any evidence of the terms of the agreement, when it was entered into, and who at THI made the offer.

3. The application of California law makes little difference because both states apply similar tests to determine the enforceability of the liquidated damages provision.

ing at the time the contract was made." Cal. Civ.Code § 1671(b) (West 1997). Therefore, there is a presumption of validity and the burden is on the party seeking invalidation to establish that the provision is unreasonable. A liquidated damages provision will be considered unreasonable "if it bears no reasonable relationship to the range of actual damages that the parties could have anticipated would flow from the breach." *See Ridgley v. Topa Thrift and Loan Ass'n,* 17 Cal.4th 970, 977, 73 Cal.Rptr.2d 378, 953 P.2d 484, 488 (Cal.1998).

 Although the defendant contends that the actual damages caused from the breach could easily have been calculated at the time of the contract, the court disagrees. The resulting harm from the premature termination would be lost future profits. Factors that can affect future profitability include "the future business ability of the franchisee, changes in the formation of highways and occurrence of traffic, gas and oil shortages, and the general ability of the public at large to use the facilities." *See Ramada Franchise Sys., Inc. v. Motor Inn Inv. Corp.,* 755 F.Supp. 1570, 1578 (S.D.Ga.1991)(discussing the difficulty of determining damages caused by breach of a hotel franchise agreement). Thus, it would be very difficult to estimate future profits at the time of the contract. Given the inability to compute the actual damages that would flow from the breach, the formula in the License Agreement provides a reasonable estimate. The computation of damages based on five years worth of franchise payments is not unreasonable considering the License Agreement's unexpired term of eighteen years. Therefore, considering that California law only requires that the amount set as liquidated damages represent a reasonable endeavor by the parties to estimate a fair compensation for any loss that may be sustained, there is no public policy reason why KSH should not be held to the measure of damages it agreed to in the License Agreement. *See Weber, Lipshie & Co. v. Christian,* 52 Cal.App.4th 645, 656, 60 Cal.Rptr.2d 677, 683 (1997).

Defendant argues that it is being forced to pay five years worth of royalty payments for having "stained grout." (Doc. 30, Def's Mtn. at 3). However, the liquidated damages provision does not take effect unless THI terminates the franchise "for cause." (Doc. 46, Def.'s Resp., Ex. A). It is undisputed that KSH defaulted on its obligation to make the Periodic Payments required under the License Agreement and failed two quality assurance inspections. Therefore, THI terminated the franchise because of KSH's multiple breaches of the License Agreement and this triggered the liquidated damages clause.

### III.   Conclusion

For the reasons set forth above, the court **GRANTS** the plaintiff's motion for summary judgment (Doc. 35) and **DENIES** defendant's motion for summary judgment on Count III (Doc. 30). The court finds that the plaintiff is entitled to $103,427.15 for accrued Periodic Payments and $246,043.80 in liquidated damages and directs the plaintiff to submit a proposed order of final judgment. The court refers all issues relating to prejudgment interest, costs and attorneys' fees to the Magistrate Judge.