**RADISSON HOTELS INTERNATIONAL, INC., a Delaware Corporation, Plaintiff,**

v.

**MAJESTIC TOWERS, INC., a California corporation, et al., Defendants.**

No. CV 06–4956 SVW (RCx).

United States District Court, C.D. California.

Jan. 25, 2007.

Barbara F. Stein, Nicholas Dewitt, Dewitt Denney and Painter, Los Angeles, CA, Kirk W. Reilly, Gray Plant Mooty, Minneapolis, MN, for Plaintiff.

Daniel C. Leib, Daniel C. Leib Law Offices, Beverly Hills, CA, for Defendants.

## ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY ADJUDICATION [16]

WILSON, District Judge.

### I. INTRODUCTION

Plaintiff Radisson Hotels International, Inc. ("Plaintiff" or "Radisson") filed the instant lawsuit against Majestic Towers, Inc. ("Majestic"), The Lee 2003 Family Trust ("Lee Trust"), and Leo Y. Lee (collectively referred to as "Defendants"), on August 9, 2006. Plaintiff has raised six causes of action: (1) breach of contract—past due fees; (2) breach of contract—liquidated damages; (3) breach of contract—failure to discontinue use of marks; (4) trademark infringement under 15 U.S.C. § 1114; (5) federal unfair competition under 15 U.S.C. § 1125(a); and (6) federal trademark dilution under 15 U.S.C. § 1125(c). The case is before this Court pursuant to 28 U.S.C. §§ 1331, 1338, and 1367.

Radisson is a Delaware corporation, with its principal place of business in Minnesota, and is a well-known licensor of guest lodging systems. Majestic is a California corporation, with its principal place of business in Los Angeles, and it is in the business of owning, operating, and managing hotel properties. The Lee Trust is organized under California law, and has its principal place of business in Los Angeles, California. Defendant Lee (an individual) is a trustee of the Lee Trust, and he is a citizen of the state of California.

This dispute centers on a "License Agreement" between Radisson and Majestic, which granted the latter the right to use the former's trademarks and proprietary reservation system for a period of up to twenty years. Within a few months, Radisson began sending letters to Majestic claiming that the latter was in default. Eventually, Radisson terminated the License Agreement, less than one year after it went into effect.

Plaintiff has now moved for summary adjudication on its first two causes of action,[1] seeking the recovery of: (1) past due fees, (2) liquidated damages, and (3) attorneys' fees. The parties have now fully briefed the Court.

For the reasons discussed below, this Court GRANTS Plaintiff's motion for summary adjudication on the issue of past due fees and liquidated damages. The Court DEFERS ruling on Radisson's request for attorneys' fees because: (1) the parties superficially discussed the issue in their briefing papers, and (2) it will be necessary for the parties to fully brief the quantum of fees to which Plaintiff is entitled. Finally, the pretrial conference and trial dates are VACATED.

### II. FACTUAL BACKGROUND

#### A. The License Agreement's Terms

Radisson entered into a written license agreement (the "License Agreement") with the Majestic on October 26, 2005, which was effective as of September 7, 2005.[2] (Blazina Decl. Ex. A at 1.) The Majestic was granted the right to operate the Rad-

---

1. In its reply brief, the parties represented to the Court that the remaining causes of action were being dismissed pursuant to a stipulated agreement. Thus, this motion represents what remains of the lawsuit.

2. Majestic's application to become a franchisee was signed on July 21, 2005. (Leib Decl. Ex. A.)

isson Plaza Wilshire Hotel, which was required to maintain at least 385 guestrooms available for rent to its guests. (*Id.*) The Majestic took over this property from a previous franchisee operating the hotel at the same location. (Traxler Supp. Decl. ¶ 5.) The License Agreement was designed to last for about twenty years, and was expire on December 31, 2025. (*See* Blazina Decl. Ex. A at 2.) However, each party had the option of terminating the License Agreement without cause for the 60-day period preceding the its five, ten, and fifteen year anniversary assuming certain conditions were met. (*Id.* at 17.) On the same day the License Agreement was signed, the Lee Trust entered into a "Guaranty of License Agreement" with Radisson, which was signed for by its trustee, defendant Lee. (*Id.* Ex. B.) There are numerous license provisions cited by Radisson that may be relevant to the resolution of the instant motion:

> *Article 5.2—Royalty Fee:* "During Agreement Years 1 and 2, Licensee [Majestic] will pay Radisson a Royalty Fee equal to the greater of 3.75% of daily Gross Room Revenues or $150,000 Minimum Royalty Fee per Agreement Year."

> *Article 5.3—Marketing Contribution:* "During Agreement Years 1 and 2, Licensee will pay Radisson a Marketing Contribution equal to 1.5% of Gross Room Revenues."

> *Article 5.4—Reservation Fee:* "During Agreement Years 1 and 2, Licensee will pay Radisson a Reservation fee equal to 1.75% of Gross Room Revenues." [3]

> *Article 17.2(a)—Default—Opportunity to Cure:* "Failure to pay any past due

fees or other amounts owed to Radisson or its Affiliates. The cure period for such a default is ten days after Licensee's receipt of the notice."

> *Article 17.4—Liquidated Damages:* "If Radisson terminates this Agreement for Licensee's fault, the actual damages that Radisson would suffer for the loss of prospective fees and other amounts payable to Radisson under Article 5 would be difficult if not impossible to ascertain.... [Liquidated damages] is calculated as the lesser of two times the amount payable to Radisson under Section 5.2 for the immediately preceding 12 months, or the number of months remaining until the commencement date of a Termination Window provided herein or expiration of the Term, whichever is sooner, times the average monthly Royalty Fees payable to Radisson under Section 5.2 for the immediately preceding 12 months. Licensee must also pay taxes on such payment in accordance with Section 5.9". [4]

> *Article 25.13—Attorneys' Fees:* "All reasonable and necessary costs and expenses, including attorneys' fees, incurred by Radisson or Licensee in enforcing any provisions of this Agreement, ... whether through injunctive relief or otherwise, will be paid to the prevailing party in such action by the other party."

> *Article 5.8—Interest and Late Payment Fees:* "Licensee will pay Radisson interest on any amounts owed to Radisson that are past due at the lesser of one and one-half percent (1.5%) per month or the maximum rate of interest permitted by applicable law."

---

3. Article 5.7 also provides that the "[l]icensee will pay the Royalty Fee, the Marketing Contribution and the percentage portion of the Reservation Fee for each month within 15 days of the end of that month without invoice."

4. As explained by Radisson, the first option (double the royalty fee for the preceding twelve months) is the "lesser" of the two alternatives provided by Article 17.4. (*Id.* Ex. L.)

*B. Dissolution of the License Agreement* [5]

On March 20, 2006, Radisson issued a Notice of Default letter to Majestic, informing the latter that it was overdue in the amount of $266,970.62, for fees assessed between November 15, 2005, and March 15, 2006. (*Id.* Ex. C.) Majestic was given ten days from receipt of the notice to cure the default. (*Id.*) As admitted by Defendants, the amounts owed had still not been paid as of April 27, 2006. Radisson issued and faxed a second letter at 4:34 p.m. that same day to Majestic. (*Id.* Ex. D.) Radisson extended the opportunity to cure the $266,970.62 deficit until April 28, 2006, at 3:00 p.m., or else Majestic would be suspended from using Radisson's reservation system. (*Id.*)

On May 1, 2006, Majestic made a $75,000 payment. On May 4, 2006, Radisson provided a further opportunity to cure the remaining default amount of $191,970.62, although the letter noted that Radisson had also earned $60,448.72 more in fees for March and April 2006. This meant that the total amount owed to Radisson as of this date was $252,419.34. (*Id.* Ex. E.) Radisson was given the choice to either cure its monetary default by May 15, 2006, or to sign a promissory note for $191,970.62 that would have extended the cure deadline to June 16, 2006.

Majestic failed to either sign the promissory note, or to pay the $191,970.62 in default by the May 15 deadline. Instead, Majestic paid an additional $75,000 on June 2, 2006. (*Id.* Ex. F.) On June 6, 2006, Radisson sent yet another letter to Majestic, in which it provided the opportunity to cure the $116,970.62 remaining on the original default by June 13, 2006. (*Id.*) Radisson additionally explained that Majestic was now in default for a second

amount of $110,842.35 for unpaid monies from March, April, 2 and May 2006, which Majestic was told to pay by June 16, 2006. Failure to abide by either deadline would lead to the immediate suspension of the Majestic from using the Radisson's reservation system.

Radisson sent two more letters to the Majestic on June 16 and June 19, 2006, explaining that the failure to pay these two defaults by June 21, 2006, would result in the termination of the License Agreement. (*Id.* Exs. G, H.) The License Agreement was terminated by written notice on June 26, 2006, as a result of Majestic's inability to cure its defaults. (*Id.* Ex. I.) On June 28, 2006, Radisson sent Majestic a bill for $1,015,824.64, which included the following breakdown: (1) $293,370.73 for past due fees, (2) $54,272.00 estimate for fees through termination of the License Agreement, and (3) $668,181.91 in liquidated damages. (*Id.* Exs. J, K, L.) The Defendants concede that none of these amounts have been paid to date. (Def. State. Gen. Issues ¶ 29.) Radisson has since revised its original estimate of $54,272 to an actual figure of $45,151.91, meaning that the total past fees owed by Majestic is actually $338,522.64. (Blazina Decl. Ex. M.) This amount is not disputed by the Defendants. (Def. State. Gen. Issues ¶ 31.)

Radisson has been unable to locate a new franchisee to replace the Majestic since the License Agreement was terminated more than six months ago. (Payne Supp. Decl. ¶ 14.)

### III. ANALYSIS

*A. Legal Standard for Summary Judgment/Adjudication*

Rule 56(c) requires the Court to grant summary judgment for the moving party

---

**5.** Majestic admits that it received all of Radisson's correspondence. (Def. State. Gen. Issues ¶ 26.)

when the evidence, viewed in the light most,; favorable to the nonmoving party, shows that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Tarin v. County of Los Angeles,* 123 F.3d 1259, 1263 (9th Cir.1997).

The moving party bears the initial burden of establishing the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). That burden may be met by " 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325, 106 S.Ct. 2548. Once the moving party has met its initial burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and identify specific facts that show a genuine issue for trial. *See id.* at 323–34, 106 S.Ct. 2548; *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact." *Addisu v. Fred Meyer, Inc.,* 198 F.3d 1130, 1134 (9th Cir.2000).

Only genuine disputes—where the evidence is such that a reasonable jury could return a verdict for the nonmoving party— over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. *See Anderson,* 477 U.S. at 248, 106 S.Ct. 2505; *see also Arpin v. Santa Clara Valley Transp. Agency,* 261 F.3d 912, 919 (9th Cir.2001)(holding the nonmoving party must provide specific evidence from which a reasonable jury could return a verdict in its favor).

### B.  Past Due Fees

In terms of Radisson's first cause of action, it is uncontested that the Majestic owes $338,522.64 in past due fees based on the License Agreement's terms found at Article 5.2, 5.3, and 5.4, and has not paid that sum to date. This quantum of damages is established by Radisson's declarations and attached business records, which have not been objected to by the Defendants as either substantively inaccurate or inadmissible on evidentiary grounds. Since the Defendants have failed to argue that they had the right to withhold the $338,522.64 under the License Agreement, and because they have not contradicted Radisson's declarations and other evidence establishing the money owed, Radisson should be granted summary adjudication on its first cause of action. *See Garcy Corp. v. Home Ins. Co.,* 496 F.2d 479, 484 (7th Cir.1974) (undisputed affidavits may establish damages for purposes of plaintiff's summary judgment motion); *Villager Franchise Sys., Inc. v. Dhami, Dhami & Virk,* 2006 WL 224425, at \*10 (E.D.Cal. Jan.26, 2006) (same).

Radisson is entitled to $338,522.64 on past due fees that the Majestic failed to pay.

### C.  Liquidated Damages

Prior to 1977, liquidated damages provisions were on the whole disfavored. *See* B.E. Witkin, Summary of California Law, § 503 (10th ed.2005). However, a commission was formed on the matter and it was determined by that group that "liquidated damage provisions are useful and should be encouraged." *Id.* § 533 (citing 13 Cal. Law Rev. Com. Reports 1740, 1741).

The modern form of California's liquidated damages statute has switched the presumption from invalidity to validity. With the exception of two types of contracts not applicable to this case, "a provision in a contract liquidating the damages for the breach of the contract is valid unless the party seeking to invalidate the

provision establishes that the provision was unreasonable under the circumstances existing at the time the contract was made." Cal. Civ.Code § 1671(b). Thus, the burden of proving that the clause is unreasonable at the time the contract was made is placed on the Defendants. *See Weber, Lipshie & Co. v. Christian,* 52 Cal. App.4th 645, 654, 60 Cal.Rptr.2d 677 (1997); *see also Atel Fin. Corp. v. Quaker Coal Co.,* 132 F.Supp.2d 1233, 1244 (N.D.Cal.2001) ("[D]efendant has met its burden of proving that the liquidated damages provision ... was unreasonable under the circumstances existing at the time the contract was made."); *Travelodge Hotels, Inc. v. Kim Shin Hospitality, Inc.,* 27 F.Supp.2d 1377, 1383 (M.D.Fla.1998) (holding that under California law "there is a presumption of validity and the burden is on the party seeking invalidation to establish that the provision is unreasonable").

■■■] This standard permits a considerable degree of latitude in fixing the sum of liquidated damages, as explained by one California appellate court:

> Given the current statutory policy which favors the validity of such agreements except in certain consumer transactions, and which casts the burden on the opposing party to prove unreasonableness and requires only that the liquidated damages bear a reasonable relationship to the range of harm that might reasonably be anticipated.

*Weber,* 52 Cal.App.4th at 656, 60 Cal. Rptr.2d 677. The clause becomes an unenforceable penalty only "if it bears no reasonable relationship to the range of actual damages that the parties could have anticipated would flow from the breach." *See Ridgley v. Topa Thrift and Loan Ass'n,* 17 Cal.4th 970, 977, 73 Cal.Rptr.2d 378, 953 P.2d 484 (1998). "The question

whether a contractual provision is an unenforceable liquidated damages provision is one for the court." *Morris v. Redwood Empire Bancorp,* 128 Cal.App.4th 1305, 1314, 27 Cal.Rptr.3d 797 (2005).

■■] The liquidated damages clause in this case can be found in Article 17.4 of the License Agreement. Two alternatives are presented, but the parties do not dispute the proper option that should be invoked (putting aside the issue of whether it is a penalty for a moment). Radisson has provided uncontradicted evidence that it received $334,090.96 in royalty fees under Article 5.2 for the year leading up to the termination (whether paid by Majestic or the predecessor licensee who previously operated at the same location). The liquidated damages, according to Radisson, are two times that amount—$668,181.91. Radisson argues that this amount is designed to estimate the revenue/future royalties that will be lost by Radisson while it searches for a replacement franchisee (which on average would take two years to accomplish).

Majestic and Radisson negotiated the terms of the contract, and Radisson accepted the specific changes to the language of Article 17.4 as proposed by Majestic. (Payne Supp. Decl. Exs. A, B.) The parties explicitly agreed through these negotiations that: "[i]f Radisson terminates this Agreement for Licensee's fault, the actual damages that Radisson would suffer for the loss of prospective fees and other amounts payable to Radisson under Article 5 would be difficult if not impossible to ascertain." (Blazina Decl. Ex. A at 16.) The Court agrees with the assessment that it would likely be difficult to calculate future lost royalties in this case at the time the contract was made.[6] As discussed by

---

6. In any event, it is only necessary to prove that the actual damages "would be impracticable or difficult to fix" if the case is governed

by Cal. Civ.Code § 1671(d). Section 1671(b) contains no such similar requirement.

one court interpreting California's law of liquidated damages:

> The resulting harm from the premature termination would be lost future profits. Factors that can affect future profitability include "the future business ability of the franchisee, changes in the formation of highways and occurrence of traffic, gas and oil shortages, and the general ability of the public at large to use the facilities." *See Ramada Franchise Sys., Inc. v. Motor Inn Inv. Corp.,* 755 F.Supp. 1570, 1578 (S.D.Ga.1991) (discussing the difficulty of determining damages caused by breach of a hotel franchise agreement). Thus, it would be very difficult to estimate future profits at the time of the contract. Given the inability to compute the actual damages that would flow from the breach, the formula in the License Agreement provides a reasonable estimate.

*Kim Shin Hospitality, Inc.,* 27 F.Supp.2d at 1383. The Court now examines each of Defendants' specific challenges to the liquidated damages clause.

### 1. The Two Year Estimate

██ The Court agrees with the Defendants that Radisson has not produced any admissible proof that it "routinely" takes two to four years to find a replacement franchisee. Radisson's sole evidence in this respect comes from one of its in-house attorneys (Payne) who is charged with overseeing the enforcement of Radisson's licensing agreements. She explained that,

> The rationale for the use of two years' worth of royalties in the computation of liquidated damages in this case is that in any given marketplace it routinely takes upwards of two to four years or more for Radisson to recruit, identify, evaluate, approve, and train a qualified Radis-

son hotel franchisee to replace a terminated franchisee.

(Payne Decl. ¶ 7.) Even accepting for present purposes that Payne is sufficiently involved in contractual oversight to be aware of the announced *rationale* for the provision, this does not support the inference that Radisson *in fact* takes an average of two to four years to find a replacement franchisee. To the extent that Payne's declaration suggests the latter, such a statement would be speculative and lacking in foundation.[7] It is true that other courts have accepted declarations from non-expert corporate executives explaining the length of time it typically takes to find a replacement franchisee. However, the individuals in these other cases appear to have been high-level executives with direct knowledge of their company's franchise operations. *See Villager,* 2006 WL 224425, at *8; *Ramada Franchise Sys., Inc. v. Motor Inn Inv. Corp.,* 755 F.Supp. 1570, 1572, 1579 (S.D.Ga.1991); *Ramada Franchise Sys. v. Cusack Dev., Inc.,* 1999 WL 165702, at *7–8 (S.D.N.Y. Mar.24, 1999). Payne is merely an attorney working for Radisson. Without more, this does not qualify her to testify to Radisson's experience in finding replacement franchisees.

However, Defendants forget that they have the burden of demonstrating that the two year period is unreasonable under California law. The only evidence offered in this respect is Majestic's application to become a franchisee for Radisson. It was signed on July 21, 2005, while the final contract was completed on October 26, 2005 (though the effective date was September 7, 2005). (Lee Decl. Ex. C.) This evidence is simply insufficient. The fact that Radisson may have been able to find a new franchisee in less than two years on a

---

7. The Court does not agree with the Defendants' argument, nonetheless, that one must be an expert economist or expert in franchise business models to comment on Radisson's past experiences in finding a replacement franchisee.

single occasion does not permit this Court to conclude that the liquidated damages clause, which serves as an *estimate* of damages that would be accrued, is unreasonable.

Furthermore, the timeframe for Majestic's takeover of the Radisson Plaza Wilshire Hotel appears to have been expedited by an agreement between the predecessor franchisee and Majestic that the latter would propose to take over as the new franchisee. (Payne Supp. Decl. ¶ 5.)[8] It was therefore unnecessary for Radisson to expend time and money searching for a new hotel location and engage in a marketing campaign to locate a hotel operator.

It is also useful to note that other courts have also upheld liquidated damages clauses based on two years of lost future royalties. *See, e.g., Ramada Franchise Sys.,* 755 F.Supp. at 1570. Therefore, the Defendants have not met their burden in demonstrating that the two year loss of royalties estimate rendered the liquidated damages clause unreasonable.

### 2. Franchisee for Less than One Year

■ When Radisson terminated Majestic from the License Agreement on June 26, 2006, it had been a Radisson franchisee for less than one year, beginning September 7, 2005. Somehow, Majestic believes the liquidated damages clause is an unenforceable "penalty" because the contractually prescribed calculation is based in part on royalty fees generated by the predecessor franchisee.

The language of the liquidated damages clause is plain. Radisson is entitled to recover double the amount of royalty fees

that were "payable" to it during the twelve months preceding the termination caused by Majestic. The contract does not state that the "payable" amounts must be limited to Majestic's period of time as a franchisee.

Since the contract was terminated less than one year after Majestic took over the hotel, it necessarily follows that the liquidated damages calculation must be based on certain revenue generated by the franchisee that Majestic succeeded.[9] Additionally, the amount of royalties "payable" to Radisson for the twelve months before the termination are undisputed. (Blazine Decl. Ex. L.)

The Defendants have not made any showing at all as to why this formula is unreasonable, other than some vague notion that it would be unfair to do so. Again, Defendants fail to meet their burden of showing that this calculation is unreasonable. Unless Defendants can proffer another persuasive argument, Radisson would be entitled to liquidated damages in the sum of $668,181.91.

### 3. Causation

Defendants argue that, under California law, the failure to pay past due royalties cannot be the "proximate cause" of Radisson's lost future royalties. In *Postal Instant Press, Inc. v. Sealy,* 43 Cal.App.4th 1704, 51 Cal.Rptr.2d 365 (1996), a California appellate court examined a somewhat similar case in which a franchisor terminated its contract with a franchisee as a result of the latter's failure to make its monthly royalty payments. *Id.* at 1707, 51 Cal.Rptr.2d 365. The trial court had de-

---

8. Since they bear the burden on this point, Defendants should have obtained discovery from Radisson that explains how long it typically takes to find a replacement franchisee. It was not Radisson's burden to offer such evidence itself.

9. The predecessor franchisee operated the same hotel—the Radisson Plaza Wilshire Hotel.

termined that the franchisor was entitled to "estimated future royalties" for the remaining eight years on the contract. *Id.* at 1709, 51 Cal.Rptr.2d 365.

On appeal, the court began by writing that "[u]nder contract principles, the nonbreaching party is entitled to recover only those damages, including lost future profits, which are 'proximately caused' by the specific breach." *Id.* The court concluded that lost future profits are not the proximate cause of the franchisee's failure to pay past royalties, where the franchisor chose to terminate the agreement:

> [T]he franchisee's failure to timely make these past royalty payments is not a "natural and direct" cause of the franchisor's failure to receive future royalty payments. Indeed the franchisor could have remained entitled to those future royalties for the full term of the franchise contract even if it sued to collect the past payments. Nothing in the franchisee's failure to pay past royalties in any sense prevented the franchisor from earning and receiving its future royalty payments. No, it was the franchisor's own decision to terminate the franchise agreement that deprived it of its entitlement to those future royalty payments. At worst, if the franchisor had not terminated the franchise agreement it might have been required to sue again or perhaps again and again to compel the franchisee to pay those future royalties in a timely fashion as those royalties accrued.

*Id.* at 1710–11, 51 Cal.Rptr.2d 365. Furthermore, the court explained:

> We conclude the Sealys' [the franchisee's] breach in failing to timely pay *past* royalties and advertising fees was not a "proximate" or "natural and direct" cause of PIP's [the franchisor] loss of *future* royalties and advertising fees. Failing to make those payments did not prevent PIP from receiving royalties on

future revenues the Sealys' produced under the franchise agreement. It was only when PIP elected to terminate that agreement that it ended the Sealys' ability to produce revenues as a PIP franchisee and also ended its own right to collect royalties on those revenues. Accordingly, these future profits are not a form of damages to which PIP is entitled for this particular breach of the franchise agreement. At the same time, we wish to make it clear we are not holding franchisors can never collect lost future royalties for franchisees' breaches of the franchise agreement. That entitlement depends on the nature of the breach and whether the breach itself prevents the franchisor from earning those future royalties.

*Id.* at 1713, 51 Cal.Rptr.2d 365 (emphasis added). *Sealy* is the only California decision on point, but its rule has been recognized by some other courts. *See United Consumers Club, Inc. v. Bledsoe,* 441 F.Supp.2d 967, 987 (N.D.Ind.2006); *Kissinger, Inc. v. Singh,* 304 F.Supp.2d 944, 949–50 (W.D.Mich.2003); *Burger King Corporation v. Hinton, Inc.,* 203 F.Supp.2d 1357, 1366 (S.D.Fla.2002); *I Can't Believe It's Yogurt v. Gunn,* 1997 WL 599391, at \*23–24 (D.Colo. Apr.15, 1997).

Yet, *Sealy* is distinguishable from the facts of the current case. In *Sealy,* the franchise agreement only vaguely stated that the franchisor would be entitled to the "benefit of the bargain" in the event of the franchisee's material breach. Given this contractual context, *Sealy* held that lost future royalties were not proximately caused by the franchisee's failure to pay past royalties. Thus, under the default contract principles governing the claim, these lost future royalties were not part of the "bargain." In the instant case, Radisson and Majestic included a specific contractual provision making Majestic liable

for Radisson's lost future profits resulting from Radisson's decision to terminate is motivated by Majestic's mere failure to pay overdue royalties. Functionally, this provision requires Majestic to indemnify Radisson's lost profits in the event that the License Agreement is terminated due to Majestic's failure to pay past royalty fees. Majestic accepted this indemnification responsibility in consideration of the right to become a Radisson franchisee. To this Court's knowledge, there is no rule that prevents a party from indemnifying (or insuring) losses that might otherwise not be recoverable under a contract law theory.

■ Not surprisingly, two other courts have upheld relatively similar liquidated damages provisions under the auspices of California law. *See Kim Shin Hospitality, Inc.*, 27 F.Supp.2d at 1382–83; *Villager*, 2006 WL 224425, at *10. These other courts (as in this case) examined contracts that required the franchisee to compensate the franchisor's lost future profits (including when the agreement was terminated by the franchisor due to the franchisee's failure to pay past due royalties). These cases further support the view that *Sealy's* default rule does not apply when the par-

ties have mutually agreed to a different assignment of risk via an indemnification/liquidated damages clause.

Thus, the parties have made a valid contractual agreement that renders *Sealy's* rule inapplicable to the facts of this case.[10]

### 4. Mitigation

■ Defendants have not shown that Radisson's mitigation efforts are relevant to the liquidated damages analysis. In fact, one of the very purposes of liquidated damages is to allow "[t]he parties [to] avoid the cost, difficulty, and delay of proving damages." B.E. Witkin, Summary of California Law, § 533 (10th ed.2005) (internal citation omitted). Requiring Radisson to prove its mitigation efforts would wholly undermine the rationale for employing liquidated damages provisions in the first place.[11]

### 5. Conclusion

On the whole, Defendants have failed to meet their burden in proving that the contractually prescribed formula is an unreasonable method for calculating this lost revenue. *Sealy* is also as distinguishable

10. Alternatively, this Court believes that the *Sealy* decision is mistaken. A trial court is not required to accept an intermediate court's opinion absent a California supreme Court decision. *See Gravquick A/S v. Trimble Navigation Int'l, Ltd.*, 323 F.3d 1219, 1222 (9th Cir.2003). The *Sealy* Court based its proximate cause analysis on a single case involving a licensor-licensee relationship decided by another intermediate California appellate court in 1931. 43 Cal.App.4th at 1712–13, 51 Cal. Rptr.2d 365 (citing *Fageol & Tate v. Baird–Bailhache Co.*, 138 Cal.App. 1, 5 P.2d 75 (1931)). In this Court's view, the *Sealy* Court's holding that a franchisor has no remedy but to sue the franchisee over and over again as lost royalties accrue is simply untenable. Though controlled by a specific statutory provision, California law allows "landlords to terminate the tenancy and sue the tenant

for damages measured by the likely amount of lost future rent." *City of San Diego v. Rider*, 47 Cal.App.4th 1473, 1502 n. 5, 55 Cal. Rptr.2d 422 (1996). Similarly, the Court believes that where a franchisee breaches a contract and demonstrates that it is unable or unwilling to meet its obligations, lost future profits are a proximate result of the breach because the franchisee's actions are a "substantial factor in bringing about that loss or damage." *US Ecology, Inc. v. State*, 129 Cal. App.4th 887, 909–10, 28 Cal.Rptr.3d 894 (2005). Thus, this Court does not find *Sealy* to be persuasive.

11. Defendants cite to *Howard Johnson Int'l, Inc. v. HBS Family, Inc.*, 1998 WL 411334, at *4 (S.D.N.Y. July 22, 1998), but the reference to mitigation in the case only pertains to "actual damages," not liquidated damages.

from the instant case as it is unpersuasive. Radisson should therefore be awarded liquidated damages in the sum of $668,181.91.

### D. The Guaranty

Radisson argues that the Lee Trust and Lee (the individual defendant) should be held jointly and severally liable with Majestic for $338,522.64 in past due fees and $668,181.91 in liquidated damages. On October 26, 2005, The Lee Trust agreed to be a guarantor of the License Agreement entered into between Radisson and the Majestic. (Lee Decl. Ex. B.) The document is signed by Lee, but the only listed "Guarantor" in the document is the Lee Trust. (*Id.*) The Lee Trust concedes that it is a guarantor, and consequently liable for Majestic's breach of the License Agreement. In contrast, Lee argues that he cannot be held liable individually for signing the document on behalf of the Lee Trust.

■ First, Lee admitted in the pleadings that he did personally guaranty the Majestic's debts. In the complaint, Radisson alleged:

In October of 2005 the Lee 2003 Family Trust (the "Trust") *and* Leo Y. Lee ("Lee") entered into a Guaranty of License Agreement (the "Guaranty") and guaranteed to Radisson that they would make full and prompt payment to Radisson of all amounts due or payable to Radisson under the License Agreement and that upon termination of the License Agreement they would timely perform all post-termination obligations required of them. . . .

(Complaint ¶ 6.) In answering this paragraph of the Complaint, the Defendants (including Lee) wrote the following:

Answering Paragraph 6 of the Complaint, Defendant admits [sic] the allegation in its entirety.

(Answer ¶ 6.) The Ninth Circuit has clearly held "[t]he party moving for summary judgment must offer evidence sufficient to support a finding upon every element of his claim for relief, except those elements admitted by his adversary." *Lockwood v. Wolf Corp.*, 629 F.2d 603, 611 (9th Cir. 1980). Lee's failure to deny his individual role as a guarantor of the License Agreement "constitutes an admission" and consequently "no evidence on the element was required." *Id.* (citing Fed.R.Civ.P. 8(d)).

■ Second, California courts have held that "a trustee represents only the trust estate, and not the beneficiary, so that he is ordinarily bound as a principal." *New v. New*, 148 Cal.App.2d 372, 381, 306 P.2d 987 (1957). Even where a trustee signs "a contract 'as trustee,' . . . he would [still] be liable individually unless he had stipulated that he was not be personally responsible." *Zimmer Const. Co. v. White*, 8 Cal.App.2d 672, 674, 47 P.2d 1087 (1935). The guaranty is completely silent as to Lee's individual liability. He did not even write "as trustee" next to his signature. Thus, he is a principal who can be held liable (with the Lee Trust) for the Majestic's debts to Radisson.[12]

### E. Attorneys' Fees

The Court defers ruling on Plaintiff's request for attorneys' fees, and instead

---

12. Where a negotiable instrument is signed for by a trustee, it is possible to evade personal liability by using words such as "as trustee." *See Charles Nelson Co. v. Morton*, 106 Cal.App. 144, 160–61, 288 P. 845. First, the guaranty does not constitute a "negotiable instrument" since it does not include "an unconditional promise or order to pay a fixed amount of money." Cal. Comm.Code § 3104. Second, as stated before, Lee failed to provide any indication in the guaranty that he was signing the document solely in his capacity as trustee.

requests that it file a separately noticed motion. Both parties only briefly touched on the issue in their briefing papers, and it seems appropriate for the Court to await a complete discussion of the legal issues in light of this Order.

 "If neither party achieves a complete victory on all the contract claims, it is within the discretion of the trial court to determine which party prevailed on the contract or whether, on balance, neither party prevailed sufficiently to justify an award of attorney fees." *Scott Co. of Cal. v. Blount, Inc.*, 20 Cal.4th 1103, 1109, 86 Cal.Rptr.2d 614, 979 P.2d 974 (1999). In this case, Radisson has prevailed on the first two causes of action. The parties have also apparently agreed to dismiss the third through sixth causes of action. Radisson claims that this constitutes a "complete victory" for purposes of analyzing their request for fees. But by raising the issue in its reply brief for the first time, Radisson has effectively denied the Defendants an opportunity to respond to the legal effect of the dismissal of the third through sixth causes of action. The parties also only devoted a minimal amount of their briefing to the law underlying contractual attorneys' fees provisions. Since the Court will also require briefing on the reasonableness of the amount of Plaintiff's fees (assuming that it is the prevailing party), it is better to decide all issues pertaining to attorneys' fees in a separate and fully briefed motion.

## IV. CONCLUSION

For the foregoing reasons, this Court GRANTS Plaintiff's motion for summary adjudication. All Defendants are joint and severally liable for $1,006,714.55. The Court ORDERS Majestic to file a motion for attorneys' fees within twenty-one days of the date of this Order. The pretrial conference and trial dates are VACATED. Concurrently with its motion for attorneys' fees, Plaintiff shall submit a proposed judgment consistent with this Order.

IT IS SO ORDERED.